Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED

# UNITED STATES DISTRICT COURT

for the _Middle_

District of _Florida_

_____ Division

|  |  |
|---|---|
| Jerri Torres | ) Case No. 8:21 cv 892 TPB - JSS |
| _____ | ) _(to be filled in by the Clerk's Office)_ |
| Plaintiff(s) | ) |
| _(Write the full name of each plaintiff who is filing this complaint._ | ) |
| _If the names of all the plaintiffs cannot fit in the space above,_ | ) Jury Trial: _(check one)_ ☒ Yes ☐ No |
| _please write "see attached" in the space and attach an additional_ | ) |
| _page with the full list of names.)_ | ) |
| -v- | ) |
|  | ) |
| See attached Complaint | ) |
| _____ | ) |
| Defendant(s) | ) |
| _(Write the full name of each defendant who is being sued.  If the_ | ) |
| _names of all the defendants cannot fit in the space above, please_ | ) |
| _write "see attached" in the space and attach an additional page_ | ) |
| _with the full list of names.)_ | ) |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.     **The Parties to This Complaint**

A.     **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Jerri Torres |
| Street Address | 17140 Pasco Acres Drive |
| City and County | Spring Hill |
| State and Zip Code | Florida    34610 |
| Telephone Number | (813) 298-4559 |
| E-mail Address | Accusatoris_officium@ Protonmail.com |

B.     **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title _(if known)_.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**Defendant No. 1**

Name: *Pasco County Board of Commissioners*

Job or Title *(if known)*:

Street Address: *8731 Citizens Drive*

City and County: *New Port Richey   Pasco*

State and Zip Code: *Florida   34654*

Telephone Number: *(352) 521-4111   or (727) 847-8100*

E-mail Address *(if known)*: *jmariano@pascocountyfl.net, roakley@pascocountyfl.net, kstarkey@pascocountyfl.net, mikemoore@pascocounty fl.net, cfitzpatrick@pascocountyfl.net, mwells@pascocountyfl.net*

**Defendant No. 2**

Name: *Barbara Hitzemann*

Job or Title *(if known)*: *Human Resource Director*

Street Address: *7536 State Street*

City and County: *New Port Richey*

State and Zip Code: *Florida   34654*

Telephone Number: *(727) 847-8103*

E-mail Address *(if known)*: *bhitzemann@pascocountyfl.net*

**Defendant No. 3**

Name: *Charles Cullen*

Job or Title *(if known)*: *Pasco County Utilities Manager*

Street Address: *19420 Central Blvd.*

City and County: *Land O'Lakes   Pasco*

State and Zip Code: *Florida   34637*

Telephone Number: *(813) 235-6188*

E-mail Address *(if known)*: *CCullen@pascocountyfl.net*

**Defendant No. 4**

Name: *Kimberly Rogers*

Job or Title *(if known)*: *Hillsborough County Team Leader-Water Res.*

Street Address: *22639 Beltrees Court*

City and County: *Land O'Lakes   Pasco*

State and Zip Code: *Florida   34639*

Telephone Number: *(813)996-7440 ; (813) 230-1849*

E-mail Address *(if known)*: *RogersK@Hillsboroughcounty.org*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 5

Name — Dan Biles
Job or Title *(if known)* — County Administrator
Street Address — 8731 Citizens Drive, Ste #350
City and County — New Port Richey, FL 34654 Pasco
State and Zip Code — Florida     34654
Telephone Number — (727) 847-2411 (x8115)
E-mail Address *(if known)* — dbiles@mypasco.net

Defendant No. 6

Name — Jeffrey Steinsnyder
Job or Title *(if known)* — County Attorney
Street Address — 8731 Citizens Drive, ste.# 340
City and County — New Port Richey     Pasco
State and Zip Code — florida     34654
Telephone Number — (727)-847-8120
E-mail Address *(if known)* — jsteinsnyder@paxocountyfl-net

Defendant No. 3

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 4

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

C.    **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | *Pasco County Utilities* |
| Street Address | *19420 Central Blvd.* |
| City and County | *Land O'Lakes      Pasco* |
| State and Zip Code | *Florida     34637* |
| Telephone Number | *727-847-8145* |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Other federal law *(specify the federal law)*: *Jurisdictional*
*Please See attached Complaint's Elements.*

☒    Relevant state law *(specify, if known)*:
*Florida Civil Human Rights Act*

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☒ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)
9/16 - 10/16; 9/17 - 10/17; 1/13/2020; 10/19/2020

C.   I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race
- ☐ color
- ☒ gender/sex  *females are dispensed unequal treatment on sexual harassment claims @ work*
- ☒ religion  *See attached complaint*
- ☐ national origin
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☒ disability or perceived disability *(specify disability)*
  *Severe Medical Condition & minor offspring*

E.   The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

X- See Attached Complaint for factual and general allegations.

X-Equal Employment Opportunity Commission letter is attached to the Complaint as Exhibit "A"

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

February 4th, 2021

B.      The Equal Employment Opportunity Commission *(check one)*:

☐      has not issued a Notice of Right to Sue letter.

☒      issued a Notice of Right to Sue letter, which I received on *(date)*  Feb. 9th 2021

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐      60 days or more have elapsed.

☐      less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*Punitive damages, Pain and suffering, exemplary damages*
*※ 21,000,000, plus any damages that the Jury finds fit; and,*
*Such other charges recommended by the Jury or the Court.*

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      4/13/21

Signature of Plaintiff

Printed Name of Plaintiff       Jerri Torres

### B.        For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

April 13th, 2021

Jerri "Megan" Torres (813) 263 3871
accusatoris_officium@protonmail.com
17140 Pasco Acres Drive
Spring Hill Florida

# United States District Court
# For the Middle District of Florida

Torres, Jerri "Megan",
     Plaintiff/Petitioner,

v.

Pasco County Board of County
     Commissioners, Barbara
     Hitzemann, Charles Cullen,
     Kimberly Rogers, Dan Biles,
     Jeffrey Steinsnyder,
     Defendants/Respondents.

Case No:

8.21cv 892 TPB - JSS

_____/

## EEOC DISCRIMINATION RIGHT TO SUE

## AND OTHERS CIVIL, COMMON LAW AND CRIMINAL CHARGES

Jerri Torres sues Barbara Hitzemann, Pasco County Government Human Resources Director,

Charles Cullen, Pasco County Utilities' Manager, Kimberly Rogers, (former) Pasco County

Engineering Manager, Dan Biles, Pasco County Administrator, Jeffrey Steinsnyder, Pasco

County Attorney, and Pasco County Board of County Commissioners in this Court for

commercial/equitable/monetary restitution for religious and employment discrimination,

unlawful employment practices damages and other counts, together with such other, further

relief(s) as a Jury may deem reasonably just under the circumstances.

### JURISDICTIONAL ELEMENTS

1.  Complaint is for damages exceeding $75,000.

2.  This is a state government and its employees' violation of federal, common, and state law for:

3.  Wrongful Termination. **(Exhibit(s): "A")**

4.  Federal Title 18 U.S.C. Section 241 – "Conspiracy against rights."

5.  Federal Title 18 U.S.C. Section 242 – "Deprivation of Rights."

6.  Federal Title 42 U.S. Code § 2000e–2 and 3. **(Exhibit(s): "A")**

7.  Title VII of the Civil Rights Act of 1964. **(Exhibit(s): "A")**

8.  Civil Rights Act of 1991. **(Exhibit(s): "A")**

9.  Lilly Ledbetter Fair Pay Act of 2009. **(Exhibit(s): "A")**

10. Florida Civil Human Rights Act. **(Exhibit(s): "A")**

1

11. Florida Statutes, Title XLIV, Chapter 760, Section 51. *Discrimination in the Treatment of Persons.*

12. Florida Statutes, Title XLVI, Chapter 817, Sections 29 & 569. *Fraudulent Practices.*

13. This court has jurisdiction because the controversies involve Federal Statutes and constitutional violations by United States citizens and Federal subdivisions or governmental organization(s). **(Exhibit(s): "A")**

14. This court has jurisdiction. **(Exhibit(s): "A")**

15. *Use of the "Simple Language Rule" or "Plain Meaning Rule" throughout this case.*

16. The "Clearfield Doctrine" applies in this case.

17. Trial by Jury under the Civil Rights Act of 1991.

### ACTUAL OR GENERAL FACTS OF THE CASE AND ALLEGATIONS

18. Defendants have conspired to terminate Plaintiff's employment at Pasco County Utilities (PCU) *for reasons undisclosed to Plaintiff prior to or around 10/19/2020.* **(Exhibit(s): "B")**

19. Barbara Hitzemann, Charles Cullen, Dan Biles, Jeffrey Steinsnyder, Kimberly Rogers, each separate Defendant, was advised of a commercial lawsuit against each of them would come if they did not assist in the "Finding of Facts" Commercial Administrative Process served on each of them.

20. Plaintiff provided notice of a lawsuit to each of the Defendants:

    a) Pasco County Board of County Commissioners (PCBCC). **(Exhibit(s): "C" and "D")**

    b) BARBARA HITZEMANN. **(Exhibit(s): "D")**

    c) CHARLES CULLEN. **(Exhibit(s): "D")**

    d) KIMBERLY ROGERS. **(Exhibit(s): "E")**

    e) JEFFREY STEINSNYDER. **(Exhibit(s): "C", "D", "F", "G")**

    f) DAN BILES. **(Exhibit(s): "G")**

21. Commercial Administrative Process was served at least once within a 30-day period to Defendants. **(Exhibit(s): "D")**

22. The Commercial Administrative Process gave each of the Defendants at least 30 days to answer or respond. **(Exhibit(s): "D")**

23. This Case serves as a process of Default against Defendants for not responding to the Administrative Process served upon them concerning the causes of action of this suit.

24. As it pertains to **Paragraph 23**, "He who does not deny, admits."

25. <u>Defendants first (1st) reason for terminating Plaintiff</u> surrounded the allegedly poor relationships or "not getting along with others" while Plaintiff provided employment services to Pasco County Utilities (PCU).

26. Defendants stated that Plaintiff's inability to work with others went back to when Plaintiff worked under the supervision of Joseph Viciere circa 2016.

27. Defendants assumed Plaintiff was not happy working for PCU.

28. Defendants are not qualified to decide what Plaintiff's feelings are at any given moment.

29. It should be noted that there is no requirement for "Happiness" anywhere in the Pasco County Board of Commissioner's (PCBCC) Employee Policy and Procedure Manual (EPPM).

30. Defendants targeted Plaintiff for working far and beyond Plaintiff's duties at PCU. **(Exhibit(s): "L")**

31. Defendants harassed Plaintiff for working far and beyond Plaintiff's duties at PCU. **(Exhibit(s): "L")**

32. Defendants discredited (punished) Plaintiff for working far and beyond Plaintiff's duties at PCU. **(Exhibit(s): "L")**

33. Defendants defend and protect bullies. **(Exhibit(s): "N")**

34. Defendants call PCU employees' bullying behavior towards others "passionate" behavior. **(Exhibit(s): "N")**

35. Defendants defend and protect sexual harassers working for Pasco County Government.

36. Defendants have taken a sexual harassment claim brought up by Plaintiff against another Pasco County employee circa September 2016 and called it, "an inability to get along with others" circa October 19th, 2020.

37. Defendants' suggestion that Plaintiff should have approached a sexual harasser is a blatant disregard and ignorance of the psychology of a sexual harasser/predator.

38. As it pertains to Defendants' suggestions on how Plaintiff should have comported Herself with the sexual harasser, "advice, unless fraudulent, does not create an obligation".

39. Defendants' suggestion/advice on how Plaintiff should have approached a sexual harasser was duplicitous.

40. Defendants insinuated that because Plaintiff did not go against Plaintiff's own religious

beliefs and approached the sexual harasser, it is a "not getting along with others" fault on Plaintiff's part.

41. Defendants have never brought up any other instance of wrongdoing on Plaintiff's part in a verbal or written form to Plaintiff's attention from when Plaintiff was under the supervision of Joseph Viciere, and no evidence exists to the contrary.

42. Defendants have never notified Plaintiff or given Plaintiff a warning for "not getting along with others", and no evidence to the contrary exists.

43. Pasco County's Operations and Management (O&M) department, situated at the same location as PCU, has a protocol where if anyone violates the rules once, then the perpetrator gets a verbal warning.

44. O&M has a protocol where if anyone violates the rules twice, then the perpetrator gets a written warning.

45. O&M has a protocol where if anyone violates the rules more than twice, then the perpetrator is terminated from employment.

46. Plaintiff cannot depend on any of the Defendants to follow their own Employee Policy and Procedure Manual (EPPM), except when it is used to allege wrongdoing on the part of Plaintiff.

47. Defendants never instituted a fair warning protocol against Plaintiff.

48. Defendants have instead been harassing Plaintiff close to an entire year (2019-2020).

49. Defendants have instead been coercing Plaintiff into doing more than any other employee or manager does for less pay since after Joseph Viciere left PCU circa 2016.

50. Defendants have instead been making Plaintiff's work environment difficult since circa 2019.

51. Defendants have been creating an unfair, unequal work environment for Plaintiff for more than a year (2019-2020). **(Exhibit(s): "K", "M", "N")**

52. Defendants have all acted unfairly, unequally towards Plaintiff without warning (circa 2019-2020).

53. Plaintiff always adhered to her religious convictions when professional work behavior was concerned – nothing short of modest and decent behavior.

54. Plaintiff always adhered to her religious conviction as it pertained to services provided to PCU was concerned.

55. Plaintiff adhered to her religious conviction when protecting her offspring's severe medical

condition.

56. Defendants gave Plaintiff a difficult time over her religious conviction to protect her offspring who suffered from a severe medical condition circa 2017 during Hurricane Irma.

57. Michael Carballa's predecessor, Flip Mellinger, forced Michael Carballa into giving Plaintiff a low score in an Employee Review because of Plaintiff's religious conviction mentioned above in **Paragraph 56**. **(Exhibit(s): "I")**

58. Plaintiff since had to fight for her religious conviction so Defendants could dispose of a decision pertaining to Plaintiff's offspring with a severe medical condition.

59. Defendants possess the records and Plaintiff's objections and requests pertaining to Defendants' objection to Plaintiff's adherence to her religious beliefs regarding her offspring's severe medical condition.

60. Several Employee Reviews and email correspondence between Defendant Kimberly Rogers and Plaintiff shows the opposite of what was used to establish reason for termination – "not getting along with others". **(Exhibit(s): "H", "I", "J")**

61. As it pertains to the 1st reason(s): Plaintiff applied, upon availability of the position, for the Asset Manager or Assistant Manager position during Defendant Kimberly Rogers's stay as supervisor or manager of the Geographic Information Systems (GIS) Department where Plaintiff worked.

62. Defendant Kimberly Rogers was responsible for hiring the proper Asset Manager candidate.

63. Defendant Kimberly Rogers dependent on Plaintiff to determine who was a qualified candidate for the position of Asset Manager. **(Exhibit(s): "J")**

64. Defendant Kimberly Rogers seem to have had a conversation with the Candidate, Elizabeth Walton, for the position of Asset Manager or Assistant Manager prior to Plaintiff helping Defendant determine if Candidate was a good choice. **(Exhibit(s): "J")**

65. Defendant Kimberly Rogers decided to hire someone other than Plaintiff or anyone else internal of PCU for the Asset Management position.

66. As it pertains to the 1st reason for coercion into resigning or wrongful termination: Defendant Charles Cullen initiated an Employee Review where he stated, "Work quality significantly reduced after did not received Asset Management Position." **(Exhibit(s): "K")**

67. Defendant Kimberly Rogers's responsibilities would entail administering or taking care of all non-GIS job-related duties within the GIS department or such things required of her by the

other Defendants.

68. Plaintiff and Defendant Kimberly Rogers had a good working relationship. **(Exhibit(s): "J", "R")**

69. Defendant Kimberly Rogers verbally invited Plaintiff to stop doing Asset Management and instead let Defendant Kimberly Rogers take over the Asset Management duties.

70. Defendant Charles Cullen knew that Defendant Kimberly Rogers had invited Plaintiff to stop doing Asset Management work and instead let Defendant Kimberly Rogers take over the *Asset Management duties.*

71. Plaintiff's Job Duties never included Asset Management duties. **(Exhibit(s): "L")**

72. Plaintiff attests that all the previous work quantity was Plaintiff overexerting Herself to fill the manager's gap before Defendant Kimberly Rogers arrived as Engineer Manager and after Defendant Kimberly Rogers left the position as Engineer Manager managing a GIS *(Geographic Information Systems) team and Plaintiff.* **(Exhibit(s): "H", "I", "J")**

73. Defendant Kimberly Rogers wanted more than what Plaintiff's job description dictated after hiring someone else to the Asset Manager position (other than Plaintiff) and even though Defendant Kimberly Rogers had taken the responsibility of Asset Management herself from Plaintiff (circa last quarter of 2019).

74. *Defendant Charles Cullen is responsible for hiring Defendant Kimberly Rogers as Engineer* Manager responsible for PCU's GIS team.

75. Defendant Charles Cullen knew Defendant Kimberly Rogers personally.

76. Defendant Kimberly Rogers wished for Plaintiff to teach Defendant Kimberly Rogers how to manage the GIS team and department for which Plaintiff agreed and carried out in *subsequent meetings (circa early first quarter of 2020).*

77. Defendant Kimberly Rogers is the responsible person who hired the "New Hire", Elizabeth Walton circa last quarter of 2019, to assist Kimberly Rogers with the Asset Management responsibilities Plaintiff had already been performing for more than two years at the pay of a GIS Analyst.

78. Further evidence exists that Defendant Kimberly Rogers was not content with Plaintiff's willingness to cooperate. **(Exhibit(s): "M")**

79. On January 9th, 2020, Plaintiff had a training meeting with Defendant Kimberly Rogers and the "New Hire", Elizabeth Walton.

80. The "New Hire" had an outburst where the "New Hire" demanded Plaintiff look at her in the eyes.

81. *Plaintiff responded to what Plaintiff felt was bullying behavior and a bizarre demand.*

82. Defendant Kimberly Rogers thereupon, attempted to enter into the record false accusations in a disciplinary action against Plaintiff for her reaction to the "New Hire's" bullying tactic and bizarre behavior. **(Exhibit(s): "M")**

83. Defendant Kimberly Rogers instructed Plaintiff's GIS colleagues not to go to Plaintiff for *technical assistance or seek answers to any technical issues from Plaintiff.* **(Exhibit(s): "N")**

84. Plaintiff was unaware of what Defendant Kimberly Rogers did as stated in **Paragraph 83** until Plaintiff's GIS colleagues told Her of it.

85. Defendant Kimberly Rogers's retaliatory action stated in **Paragraph 83** damaged Plaintiff's reputation with Plaintiff's GIS team.

86. *Defendant Kimberly Rogers's retaliatory action stated in* **Paragraph 83** *damaged Plaintiff's* reputation with the Operation and Management (O&M) department.

87. Plaintiff's GIS colleagues resented Defendant Kimberly Rogers's request of them. **(Exhibit(s): "N")**

88. After Defendant Kimberly Rogers resigned her post at Engineering Manager circa first or *second quarter of 2020, Plaintiff and Plaintiff's GIS team worked together to rebuild* everything that Defendant Kimberly Rogers and her "New Hire", Elizabeth Walton, had broken, i.e., web maps, etc.

89. Defendant Kimberly Rogers's choice for the position of Asset Manager (Elizabeth Walton) bullied someone other than Plaintiff. **(Exhibit(s): "N")**

90. *Defendant Kimberly Rogers's choice for the position of Asset Manager (Elizabeth Walton)* inferred that she herself was not fit to fill the position of Asset Manager. **(Exhibit(s): "N")**

91. Plaintiff was never against the chance to help a fellow colleague.

92. The allegations dictating that Plaintiff was not more than willing to go beyond her duties is moot since she had already been performing more than her job description dictated for less *pay and previous managers referenced Plaintiff's dedication to excellence.* **(Exhibit(s): "I", "L")**

93. Nothing Plaintiff has ever done contradicts the fact that Plaintiff performed well beyond Plaintiff's job description as GIS analyst at PCU. **(Exhibit(s): "L")**

94. Evidence exists where the "New Hire", Elizabeth Walton, engaged in the same bizarre behavior and inappropriate or unprofessional behavior of bullying others. **(Exhibit(s): "N")**

95. *Defendant Kimberly Rogers engaged in retaliatory behavior against Plaintiff because* Plaintiff refused to be bullied by the "New Hire", Elizabeth Walton. **(Exhibit(s): "M")**

96. Defendant Kimberly Rogers's Disciplinary Review meeting with Defendant Barbara Hitzemann required revision for inaccuracies and unfair tactics at retaliation and malfeasance. **(Exhibit(s): "M")**

97. *Up to October 19th, 2020, there is no record showing the same tactics performed by* Defendants, pressure and unfair employment and work environment tactics and difficulties, were taken, or implemented against anyone else but the Plaintiff.

98. Up to October 19th, 2020, there is no record showing the same actions taken against Plaintiff were ever implemented against the person who bullied the Plaintiff while at PCU.

99. Up to October 19th, 2020, there is no record showing the same actions taken against Plaintiff were ever implemented against the male Pasco County employee who sexually harassed Plaintiff circa 2016 while Plaintiff was under Joseph Viciere's supervision.

100. Defendant Barbara Hitzemann was the responsible Human Resources Director who did the intake of Plaintiff's sexual harassment claim that occurred circa the last quarter of 2016.

101. Defendant Barbara Hitzemann stated that "not getting along with others" went back to when Plaintiff was under the supervision of Joseph Viciere.

102. Defendant Barbara Hitzemann stated in the sexual harassment intake of Plaintiff that Plaintiff should have responded to the sexual harasser in a negative manner.

103. Plaintiff's religious beliefs bar Plaintiff from participating in negative/confrontational situations such as what Defendant Barbara Hitzemann suggested at the sexual harassment intake (circa last quarter of 2016).

104. Then Plaintiff's supervisor, Joseph Viciere, witnessed the intake of the claim mentioned in **Paragraphs 100 -102**.

105. *Defendant Kimberly Rogers and others, i.e., Charles Cullen, allegedly filed a complaint against Plaintiff.*

106. Plaintiff was never aware of any complaints against Her that may have been placed on Her Employee Records.

107. Defendant Kimberly Rogers's complaint attempted to establish that Plaintiff could "not

get along with others". **(Exhibit(s): "M")**

108.    Defendants Kimberly Rogers and Barbara Hitzemann confronted Plaintiff about the claim

mentioned in **Paragraph 107**. **(Exhibit(s): "M")**

109.    Defendants Kimberly Rogers and Barbara Hitzemann could not prove the claim to be true

and opted to re-write the complaint. **(Exhibit(s): "M")**

110.    Defendant Charles Cullen engaged in retaliatory tactics against Plaintiff instead of

listening to Plaintiff's concerns about unfair work environment and inappropriate behaviors

exhibited by other employees against Her. **(Exhibit(s): "K")**

111.    Defendant Charles Cullen lied about Plaintiff. **(Exhibit(s): "K")**

112.    The record shows that Defendants' acts were grossly negligent.

113.    "Gross negligence is held equivalent to intentional wrong" on the part of the Defendants.

114.    Defendant Charles Cullen's review exhibited here as **Exhibit "K"** is a review not on the

performance of Plaintiff's duties but *on an amorphous and unspoken expectations.*

115.    Defendant Charles Cullen is not "bound to give information about things he is ignorant

of, but everyone is bound to know that which he gives information about." **(Exhibit(s): "K")**

116.    Defendant Charles Cullen had a witness during Plaintiff's rebuttal session of Defendant

Charles Cullen's "Employee Review" exhibited in **Exhibit "K"**.

117.    *Plaintiff offers* **Exhibit "T"** *as the rebuttal points discussed in full or in part with*

Defendant Charles Cullen and the witness.

118.    Defendant Charles Cullen stated in his "Employee Evaluation" of Plaintiff, that Plaintiff

had "generally poor relationships with internal customers". **(Exhibit(s): "K")**

119.    Defendant Charles Cullen's "Employee Evaluation" of Plaintiff contradicts Defendant

Kimberly Rogers's "Employee Evaluation". **(Exhibit(s): "K", "R")**

120.    Defendant Charles Cullen signed Defendant Kimberly Rogers's "Employee Evaluation"

of Plaintiff 10/2/2019. **(Exhibit(s): "R")**

121.    Defendant Charles Cullen's "Employee Evaluation" of Plaintiff states that Plaintiff "has

been coached on proper leadership focus, assigned books to read, no progress noted".

**(Exhibit(s): "K")**

122.    Plaintiff never had a talk with anyone about "leadership coaching" and no evidence exists

to the contrary.

123.    Plaintiff was never "assigned books to read" and no evidence exists to the contrary.

9

124.   Plaintiff was never given an opportunity to review claims brought up against Her and no evidence exists to the contrary.

125.   Plaintiff could not have been given a review where a "no progress noted" could have been filed against Plaintiff based on Her receiving "leadership coaching" or having been "assigned books to read" because these things never happened and no evidence to the contrary exists.

126.   Defendant Charles Cullen's "Employee Review" of Plaintiff regarding "no progress noted" was never provided to Plaintiff for Her review or rebuttal because the things Defendant Charles Cullen stated as Plaintiff having received or having been assigned to Her never happened. (Exhibit(s): "K")

127.   Defendant Charles Cullen's "Employee Review" was a blatant attempt to purposely discredit Plaintiff in the eyes of PCU management. (Exhibit(s): "K")

128.   Defendants took no steps to help Plaintiff and instead caused Her harm by asking Her to resign for an alleged "inability to work with others." (Exhibit(s): "K", "O", "P")

129.   Upon Defendant Kimberly Rogers's hiring someone other than Plaintiff to the position of Asset Management, another manager at PCU expressed strong disapproval to Defendant Charles Cullen for Defendants choice not to hire or promote Plaintiff to the Asset Manager position (circa last quarter of 2019).

130.   Defendant Kimberly Rogers stated in Plaintiff's "Employee Evaluation…" that Operations and Management (O&M) had "high praise" of Claimant. (Exhibit(s): "R")

131.   The manager who expressed strong disapproval to Defendant Charles Cullen was an O&M manager.

132.   A disciplinary action was filed by Defendant Kimberly Rogers 1/13/2020. (Exhibit(s): "M")

133.   The disciplinary action was heard by Defendant Barbara Hitzemann. (Exhibit(s): "M")

134.   A complete rewrite of the disciplinary action was suggested by Defendant Barbara Hitzemann. (Exhibit(s): "M")

135.   Defendant Kimberly Rogers never revised the disciplinary employee review she and Defendant Barbara Hitzemann had agreed to revise. (Exhibit(s): "M")

136.   Defendant Kimberly Rogers's disciplinary employee review is a blatant act of malfeasance to discredit Plaintiff. (Exhibit(s): "M")

137.     Defendant Kimberly Rogers's disciplinary employee review is a blatant act of malfeasance to damage Plaintiff's reputation. **(Exhibit(s): "M")**

138.     *Defendant Kimberly Rogers's disciplinary employee review was an act of retaliation.*

139.     Defendant Kimberly Rogers, weeks later after her act mentioned in **Paragraph 132**, resigned her post as Engineering Manager or manager of the PCU GIS team.

140.     As it further pertains to the 1st reason of inability to "Get along with others": Defendants brought up an instance in which Plaintiff was sexually advanced to, something Plaintiff had argued four (4) years prior in 2016, was unprofessional, unsolicited, and inappropriate at a working environment like PCU ad initio.

141.     Plaintiff's religious beliefs bar Plaintiff from acknowledging, let alone participating in elicit sexual conduct of any kind, at any time or anywhere except as it may pertain to the allowed conduct due to Plaintiff's marital status with Her spouse.

142.     Defendants have stated that Plaintiff's actions the series of days Plaintiff was sexually harassed merited disciplinary action against Plaintiff and have brought it up as part of the "inability to get along with others" issues or protestation by Defendants, a willful act of prejudice and discrimination based on religious status and beliefs.

143.     Defendants' other alleged established reasons for termination surround the existence of a recorded conversation property of the Plaintiff between a Plaintiff's colleague and Defendant Kimberly Rogers.

144.     As it pertains to the 2nd reason, recording conversations, and in combination with the aforesaid in **Paragraph 143**, the recorded conversation was acquired by Defendant Charles Cullen by Defendant Charles Cullen own volition from Plaintiff at Defendant Charles Cullen's personal request. **(Exhibit(s): "U")**

145.     As it pertains to Defendants neglect towards their subordinates, e.g., here, the Plaintiff, and deceitful act of acquiring the recorded conversation between Defendant Kimberly Rogers, Elizabeth Walton (New Hire), and Plaintiff to call it a crime against Plaintiff is *damaging to Plaintiff, especially when Plaintiff was never charged.*

146.     As it pertains to **Paragraph 72**, the actions taken by Defendants here described in **Paragraph 145**, are acts targeted unfairness.

147.     Plaintiff never **intended** to use anything to damage anyone in any manner – *sine qua non.* **[Emphasis added]**

11

148.   As it may pertain to **Paragraph 147**, "In offenses, the intention is regarded, not the event".

149.   *Defendant Charles Cullen acquired the recorded conversation from a private storage location by Defendant Charles Cullen's own volition.*

150.   As it pertains to **Paragraph 149**, "a deceiver, deals in generals." **(Exhibit(s): "K")**

151.   At Plaintiff's request for help with a co-worker who had been bullying the Plaintiff: Plaintiff has had the need to acquire evidence against persons acting against Her for *reasonable fear of Plaintiff being willfully damaged or even injured in the process of conducting Her duties at PCU.*

152.   Plaintiff, having assessed the above reasons for dismissal or termination of employment, establishes the reasons for acquiring factual evidence of maleficence against Plaintiff:

153.   Plaintiff had a reasonable fear she would be harassed, prejudiced, discriminated, and *retaliated against **again** and no one, just like it occurred with the sexual harassment complaint filed four (4) years earlier circa 2016, would provide fair restitution,* acknowledgement, support. **[Emphasis added]**

154.   Defendants' other established reasons for termination are because Plaintiff's GIS department needed relocation or reorganization to another department or location, and this *could not occur unless Plaintiff was terminated or coerced into submitting her resignation.* **(Exhibit(s): "O", "P")**

155.   As it pertains to **Paragraph 154**, "What otherwise is good and just, if it be sought by force and fraud, becomes bad and unjust."

156.   Defendant Barbara Hitzemann stated: Even if things could be rectified through a hearing, *PCU was not happy with Plaintiff being there.*

157.   Defendant Barbara Hitzemann stated that even if Plaintiff wanted to challenge PCU and Pasco County Board of County Commissioners' decision to coerce Plaintiff into resigning, Defendant would not want Plaintiff.

158.   Defendant Barbara Hitzemann stated that the PCU GIS department was going to be moved and where it was going to be moved to, *they did not want Plaintiff to move with it.*

159.   Defendant Barbara Hitzemann's statements are evidence that Defendants have been in collusion to retaliate against Plaintiff for some time.

160.   Defendant Barbara Hitzemann's statements are evidence that Defendants have been in

collusion to damage Plaintiff's reputation at PCU for some time.

161.   Defendant Barbara Hitzemann assumed Plaintiff was not happy working for PCU.

162.   *Plaintiff never stated she was not happy working at PCU.* **(Exhibit(s): "Q")**

163.   Plaintiff's religious belief and professional etiquette does not require Her to be "Happy" anywhere Plaintiff provides Her GIS Analyst services.

164.   It should be noted that Defendant Barbara Hitzemann may have been projecting, for some reason, her own feelings about working for Pasco County.

165.   *It is not plausible to determine Plaintiff's feelings about Her duties and work She* performed at PCU.

166.   Defendant Barbara Hitzemann's assumption of Plaintiff's feelings was not just illogical, but neglectfully catastrophic to Plaintiff's professional reputation at PCU and management.

167.   Upon Plaintiff's written resignation, Defendant Barbara Hitzemann agreed to compensate *Plaintiff through the beginning of December.* **(Exhibit(s): "O", "P")**

168.   Plaintiff had submitted both the letter of resignation and Administrative Process to Defendants seeking answers and documentation about the coerced resignation. **(Exhibit(s): "C" through "G")**

169.   Defendant Barbara Hitzemann alluded to contend that Plaintiff had made a request to add *additional weeks of pay from the beginning of December to the end of December.* **(Exhibit(s): "O", "P")**

170.   Plaintiff alluded to the fact that the date accepted to receive compensation was the end of December. **(Exhibit(s): "O", "P")**

171.   Defendant Barbara Hitzemann requested a settlement reindicating the actual end date of *compensation or immediate end of compensation.* **(Exhibit(s): "O", "P")**

172.   Plaintiff affirmed in Affidavit Form (Conditional Acceptance Response) the mistake of the dates on the resignation letter, but Defendants disregarded the affirmations and discontinued compensation prior to the agreed upon date of the beginning of December 2020. **(Exhibit(s): "Q")**

173.   *As it pertains to* **Paragraph 172,** *"He who mistakes is not considered as consenting."*

174.   Plaintiff's affirmation in Affidavit Form (Conditional Acceptance Response) was presented to Defendants Jeffrey Steinsnyder, Dan Biles, and the entire Board of Commissioners together and separately, Ron Oakley, Jack Mariano, Mike Moore, Kathryn

Starkey, Mike Wells. **(Exhibit(s): "C", "D", "F", "G")**

175.    Plaintiff responded to Defendants' settlement request. **(Exhibit(s): "Q")**

176.    *Defendant Barbara Hitzemann determined to discontinue Plaintiff's pay immediately* upon Plaintiff submitting a counteroffer for settlement of this dispute on or around November 2020. **(Exhibit(s): "Q")**

177.    Plaintiff has attempted peaceful resolution of disputes with Defendants concerning this cause(s) of action(s) through commercial Administrative Process. **(Exhibit(s): "C" through "G")**

178.    Defendants are culpable of at least two instances of conspiracy against rights - Title 18 U.S.C. Section 241. **(Exhibit(s): "K", "M", "O", "P", "R")**

179.    Defendants can act together to deprive Plaintiff of rights - Title 18 U.S.C. Section 241. **(Exhibit(s): "K", "M", "O", "P", "R")**

180.    *Defendants acted together to deprive Plaintiff of rights - Title 18 U.S.C. Section 242.* **(Exhibit(s): "K", "M", "O", "P", "R")**

181.    Defendants acted together to discriminate against Plaintiff via retaliation, religious bias, coercion, unfair employment practices, harassment, bullying, targeting, wrongful termination, creating an adversarial work environment for Plaintiff - Title VII of the Civil Rights Act of 1964 and Civil Rights Act of 1991. **(Exhibit(s): "K", "M", "O", "P", "R" and others)**

182.    As it pertains to **Paragraph 181**, and all the wrongs Defendants perpetrated against Plaintiff, "The greatest enemies to peace are force and wrong."

183.    As it pertains to **Paragraph 181**, and all the wrongs Defendants perpetrated against Plaintiff, *"Force and wrong are greatly contrary to peace."*

184.    As it pertains to **Paragraph 181**, and all the wrongs Defendants perpetrated against Plaintiff, "Force is inimical to the laws."

185.    Defendants are a product of their own personal environments.

186.    When Defendants lie, coerce, treat others, e.g., Plaintiff, unfairly, unequally, etc., they *affect the work environment for everyone.*

187.    Defendants' wrongful behaviors create and perpetuate distrust.

188.    Distrust, therefore, becomes rational for those like Plaintiff who do not wish to be taken advantage of or damaged on a consistent basis.

189.   Defendants have been consistent at creating distrust in others.

190.   Defendants have been consistent at creating a terrible work environment for Plaintiff during the last year (2019 – 2020).

191.   Defendants targeted Plaintiff to initiate a constructive dismissal situation, and no evidence to the contrary exists.

192.   Defendants acted together to create a toxic working environment for Plaintiff through retaliatory tactics, religious bias, coercion, unfair or unequal employment practices, targeting, harassment, bullying - 42 U.S. Code § 2000e–2 and/or 3.

193.   The Defendants were notified by Administrative Process of the following facts: (Exhibit(s): "C" through "G")

194.   Defendants are not acting in compliance to the rules prescribed to their official or employment positions.

195.   Defendants pretend they are not in the wrong by deceptive measures of omission.

196.   Plaintiff presented a method of dissolution of dispute and challenge against the Defendants by Administrative Process. (Exhibit(s): "C" through "G")

197.   Plaintiff established a 90-day process by which Defendants could consult with Plaintiff and arrive a peaceful conclusion of the controversy. (Exhibit(s): "C" through "G")

198.   Plaintiff presented at least 3 Administrative Documents; each presented every 30 days to the Defendants. (Exhibit(s): "C" through "G")

199.   Defendants opted to ignore the Plaintiff's Administrative Processes.

200.   Defendants' way they dealt with Plaintiff is substantially different than the way they dealt with Plaintiff's sexual harasser and bully. (Exhibit(s): "N")

201.   Defendants did not follow through the protocol listed in the (PCBCC) Pasco County Board of Commissioner's Employee Policy and Procedure Manual (EPPM) when it came to dealing with Plaintiff's petitions about sexual harassment and bullying.

202.   The EPPM states nothing about how to proceed against an employee when alleged cause cannot be proven to have been damaging to someone else.

203.   Defendants did not follow their EPPM accordingly and sought to damage Plaintiff without proper cause, i.e., without proving anyone had been damaged by Plaintiff's alleged wrongdoing or actions.

204.   The EPPM states what constitutes harassment and bullying or damaging behavior, yet

Defendants did not take the same actions against the sexual harasser and bully Plaintiff brought to their attention.

205.    *Defendants used Plaintiff's petitions for help with a colleague who was harassing and bullying Plaintiff and used it against Plaintiff.* **(Exhibit(s): "K")**

206.    As it pertains to **Paragraph 205**, and all the wrongs Defendants perpetrated against Plaintiff, "He who does not repel a wrong when he can, induces it".

207.    Defendants retaliated against Plaintiff even though Plaintiff performed more (Asset *Management) tasks and duties than Plaintiff had been hired to perform.* **(Exhibit(s): "K", "M", "L", "O", "P")**

208.    Defendants coerced Plaintiff into performing Asset Management tasks they themselves were in the position to perform for the appropriate pay rate called for their own official positions of employment. **(Exhibit(s): "K", "M")**

209.    *Defendant Kimberly Rogers reviewed Plaintiff and gave Plaintiff a mediocre review even though Defendant had only just filled the position of Engineer Manager no more than about two months earlier circa third quarter of 2019.* **(Exhibit(s): "R")**

210.    Defendant Kimberly Rogers told Plaintiff the reason for the mediocre ratings was part of Defendant Kimberly Rogers' plan to give Plaintiff a subsequent review with stellar ratings to *justify garnering Plaintiff a pay raise and/or promotion.* **(Exhibit(s): "R")**

211.    All Defendants engaged in improper coercive behavior to quash Plaintiff into doing more than what Plaintiff had been hired to do. **(Exhibit(s): "K", "M", "L", "R")**

212.    All Defendants, and others not yet named, engaged in improper coercive or unlawful employment behavior to place Plaintiff in a position where Defendants could fabricate *"Employee Reviews" and disciplinary reviews filled with lies, retaliatory statements,* malfeasance to damage Plaintiff's position at PCU. **(Exhibit(s): "K", "M", "R")**

213.    Defendant Kimberly Rogers was hired to perform the tasks of Asset Management and GIS supervision Plaintiff had been doing since the time when Joseph Viciere, Plaintiff's manager, worked for PCU circa 2016.

214.    *Plaintiff offered to train Defendant Kimberly Rogers.*

215.    Plaintiff did train Defendant Kimberly Rogers because she had never managed a GIS team before.

216.    Plaintiff complied with Defendant Kimberly Rogers wishes to train Elizabeth Walton,

Defendant Kimberly Rogers's "New Hire" to the position of Asset Manager.

217.  Plaintiff never retaliated against anyone at PCU.

218.  *Plaintiff never refrained from aiding anyone.* **(Exhibit(s): "R")**

219.  Plaintiff sought fairness at PCU.

220.  Defendants did not produce a fair working environment to Plaintiff since Joseph Viciere left his position at PCU, Plaintiff's previous manager before Michael Carballa.

221.  Michael Carballa stated Plaintiff deserved a promotion. **(Exhibit(s): "I")**

222.  *Defendant Kimberly Rogers had an opportunity to hire Plaintiff into the position Michael Carballa had been trying to open for three previous years (circa 2016- ).*

223.  Defendants gave the "New Hire", Elizabeth Walton, the benefit of the doubt that she could perform the tasks per the Asset Manager job description.

224.  Plaintiff had been performing Defendant Kimberly Rogers's tasks, and Plaintiff's GIS task for over two years and *Defendants called it "an inability to work with others"* for not wishing to be coerced into performing someone else's duties all the while sustaining and accepting bullying tactics and behaviors from the "New Hire", Elizabeth Walton. **(Exhibit(s): "N")**

225.  As it pertains to **Paragraph 224**, and all the wrongs Defendants perpetrated against Plaintiff, *"What otherwise is good and just, if it be sought by force and fraud, becomes bad and unjust".*

226.  Plaintiff sustained an unfair workload not in accordance with Plaintiff's job description since Joseph Viciere left PCU. **(Exhibit(s): "L")**

227.  Plaintiff sustained mistreatment and unprofessional bias and attacks against Her religious conviction. **(Exhibit(s): "K", "M", "O", "P")**

228.  Defendants engaged on a vendetta against Plaintiff's professional decision-making abilities, even though the task was never Plaintiff's to perform, but most of the Defendants'. **(Exhibit(s): "K", "M", "O", "P", "R" and "L")**

229.  Defendants engaged on a vendetta against Plaintiff to see Plaintiff leave through *constructive dismissal due to Plaintiff's religious observance of proper workplace etiquette.* **(Exhibit(s): "K", "M", "O", "P" and "L")**

230.  Defendants cannot prove a causal damage for which Defendants have framed their entire reason to coerce Plaintiff to resign.

231.   Defendants cannot prove the elements of a cause of harm or damage to anyone because there was no intention to damage anyone on Plaintiff's part.

232.   The elements of a cause for damage or harm to anyone are as follow:

a)   *Causation consists of two distinct sub-elements. As legal scholars have recognized, before a defendant can be convicted of a crime that includes an element of causation, the State must prove beyond a reasonable doubt that the defendant's conduct was (1) the "cause in fact" and (2) the "legal cause" (often called "proximate cause") of the relevant harm...In order to establish that a defendant's conduct was the "cause in fact" of a particular harm, the State usually must demonstrate that "but for" the defendant's conduct, the harm would not have occurred.* Eversly v. State, 748 So.2d 963, 966-967 (Fla. 1999).

b)   *It is a fundamental principle of law that no person be adjudged guilty of a crime until the state has shown that a crime has been committed. The state therefore must show that a harm has been suffered of the type contemplated by the charges (for example, a death in the case of a murder charge or a loss of property in the case of a theft charge), and that such harm was incurred due to the criminal agency of another. Thus, it is sufficient if the elements of the underlying crime are proven rather than those of the particular degree or variation of that crime which may be charged.* State v. Allen, 335 So. 2d 823,825 (Fla. 1976).

233.   Plaintiff's facts and allegations and evidence presented here show nothing but plausibility that Defendants were in the wrong.

234.   Plaintiff harming or causing damage to someone at PCU because of Defendants' allegations is not plausible.

235.   Defendants retaliated against Plaintiff because Defendant Kimberly Rogers took over Plaintiff's Asset Management tasks but failed to perform as well as Plaintiff had performed the Asset Management tasks for over two to three (2-3) years prior.

236.   The record shows that Defendants lied when they alleged Plaintiff could not get along with others and there is absolutely no evidence that could plausibly support such an allegation and cause for constructive dismissal.

237.   As it pertains to **Paragraphs 186 thru 192, and 235 and 236,** and all the wrongs Defendants perpetrated against Plaintiff, "Error artfully colored is in many things more probable than naked truth; and frequently error conquers truth and reasoning."

238.   **Exhibit "S"** shows how far Plaintiff was always willing to go to console and aid Her teammates and co-workers.

239.   As it pertains to Defendants suggesting to Plaintiff that She should have confronted the sexual harasser:

*I desire then that in every place the men should pray, lifting holy hands without anger or quarreling; (9) likewise also that women should adorn themselves in respectable apparel, with modesty and self-control, not with braided hair and gold or pearls or costly attire, (10) but with what is proper for women who profess godliness—with*

18

*good works. (11) Let a woman learn quietly with all submissiveness. (12) I do not permit a woman to teach or to exercise authority over a man; rather, she is to remain quiet. (13) For Adam was formed first, then Eve; (14) and Adam was not deceived, but the woman was deceived and became a transgressor.*
—1 Timothy 2:8–14

240.   *All Scripture is breathed out by God and profitable for teaching, for reproof, for correction, and for training in righteousness* – 2 Timothy 3:16

241.   Plaintiff has submitted Herself to her religious beliefs, quiet demeanor and spirit that is peaceful, without turmoil.

242.   *But I say to you that everyone who looks at a woman with lustful intent has already committed adultery with her in his heart* – Matthew 5:28.

243.   Plaintiff changing Her religious beliefs was never a condition of employment at PCU.

244.   Plaintiff believes that those in positions of authority at PCU should have been the ones responsible for exercising their authority over their sexual harasser.

245.   No investigation into the allegations of sexual harassment ever took place, and there is no evidence to the contrary.

246.   Defendants have defrauded Plaintiff.

## LEGAL PRECEDENTS

247.   *Everyone shall have the right to freedom of thought, conscience, and religion. This right shall include freedom to have or to adopt a religion or belief of his choice, and freedom, either individually or in community with others and in public or private, to manifest his religion or believe in worship, observance, practice, and teaching.* **No one shall be subject to coercion which would impair his freedom to have or to adopt a religion or believe of his choice** – International Covenant on Civil and Political Rights Article 18.

248.   As it pertains to Plaintiff's Presentments by Administrative Process to each of the Defendants in their private commercial liability capacity: ***Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading*** – United States V. Tweel, Case No. 76-2324, United States Court of Appeals, Fifth Circuit, 50 F.2d 297 (1977) – and – Prudden, supra, p. 1033.
**(Exhibit(s): "C" through "G")**

249.   *Governments descent to the level of mere private corporations and take on the characteristics of a mere private citizen...where private corporate commercial [Federal Reserve Notes] and securities [checks] is concerned.... For the purpose of suit, such*

*corporations and individuals are regarded as entities entirely separate from government –* Clearfield Doctrine. Clearfield Trust Co. v. United States, 318 U.S. 363-371 1942.

250.  *To defraud is to practice fraud, to cheat or trick. To deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice.* (Black's Law Dictionary 551) *The common law is quite similar: a person must be harmed or prejudiced.* (E.g., People v. Brown (1947), 397 Ill. 92, 97, and People v. Mau (1941), 377 Ill. 199, 202-06. *But the most telling definition is that in the Criminal Code of 1961* (Ill. Rev. Stat. 1975, ch. 38, par. 17-3)*, and it merits repeating: An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property. A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated –* People v. Henderson, 71 Ill. 2d 53 (1978) 373 N.E.2d 1338.

251.  *Fraud in the common law sense of deceit is committed by deliberately misleading another by words, by acts, or, in some instances – notably where there is a fiduciary relationship, which creates a duty to disclose all material facts – by silence –* United States v. Dial, 757 F.2d 163, 168 (7th Cir. 1985).

## TERMS DEFINED, AS MAY BE USED IN THIS CASE:

**\*Common-law Cheat.** *The obtaining of money or property by means of a false token, symbol, or device; this being the definition of a cheat or "cheating" at common law. State v. Wilson, 72 Minn. 522, 75 N. W. 715; State v. Renick, 33 Or. 584, 50 Pac. 275, 44 L. R. A. 266, 72 Am. St. Rep. 758.*

**\*Constructive dismissal**, also known as constructive discharge or constructive termination – *is a modified claim of wrongful termination. Wrongful constructive dismissal occurs when, instead of firing the employee, the employer wrongfully makes working conditions so intolerable that the employee is forced to resign. As in wrongful termination, the employer must violate the employment contract or public policy by targeting the employee.*

**\*Corporation** *is a citizen – a citizen is a corporation.*

**\*Florida** *– land that is independent of UNITED STATES or political nexus or political society, i.e., State of Florida.*

**\*Gross Negligence.** *An indifference to, and a blatant violation of, a legal duty with respect to the rights of others. Gross negligence is a conscious and voluntary disregard of the need to use reasonable care, which is likely to cause foreseeable grave injury or harm to persons, property, or both.*

**\*"IN THIS STATE and WITHIN THIS STATE***, or* **in this state and within this state** *includes all federal areas lying within the exterior boundaries of the state." RCW (Revised Code of Washington) 82.04.200*

**\*land** *- space with height, width, depth, and height.*

**\*man** *– gender neutral.*

**\*Nations or states** *- are bodies politic, societies of men united for the purpose of promoting their mutual safely and advantage by the joint efforts of their combined strength. Law of Nations, Preliminaries, Section 1.*

**\*Maxim** *–* (Black's Law Dictionary, 4th Edition): *Maxims are but attempted general statements of rules of law and are law only to the extent of application in adjudicated cases.*

**\*Maxim of Law** *–* (Black's Law Dictionary, 3rd Edition, (1933), page 1171): *An established principle of proposition. A principle of law universally admitted as being a correct statement of the law, or as agreeable to reason. Coke defines a maxim to be <u>"a conclusion of reason</u>" Coke on Littleton, 11a. He says in another place, "<u>A maxim is a proposition to be of all men confessed and granted without proof, argument, or discourse.</u>" Coke on Littleton. 67a.*

**\*parity** *- noun - the state or condition of being equal, same value.*

**\*Political Laws/Civil Law** <u>*is "Roman Law" and "Roman Civil Law," convertible phrases, meaning the same system of jurisprudence.*</u> *That rule of actions which every particular nation, commonwealth, or city has established peculiarly for itself; <u>more properly called. "Municipal" law, to distinguish it from the "Law of Nature,"</u> and from International Law. See Bowyer, Mod. Civil Law, 19; Sevier vs. Riley, 189 Cal. 170, 244 P. 323, 325" Black's Law Dictionary, Rev. 4th Ed. [emphasis added]*

**\*refute** *– to challenge and provide evidence to prove wrong, to deny, or contradict, and give evidence to support a differing statement or accusation.*

21

**\*STATE OF FLORIDA** – *government or body politic on that land, that is an inseparable part of UNITED STATES.*

**\*"Status. L. Standing** – *state, condition, situation. Compare Estate. A corporation has no status as a citizen outside of the jurisdiction where it was created." Anderson's Law Dictionary, 1889 Edition, page 968*

## COUNT 1:
## CONSTRUCTIVE FRAUD OR FRAUD

252.   Plaintiff realleges and restates the foregoing jurisdictional elements, the actual or general facts of the case and allegations, and legal precedents, and facts and allegations in the Counts.

253.   Plaintiff has been promised either a raise or a higher position if continued to perform managerial tasks not associated with Plaintiff's Job Description and contract. **(Exhibit(s): "I", "L")**

254.   Former Pasco County Utilities manager above Plaintiff, Michael Carballa, attempted to promote Plaintiff. **(Exhibit(s): "I", "L")**

255.   Defendant Charles Cullen became Plaintiff's manager circa 2018.

256.   Defendant Charles Cullen continued to demand Plaintiff to perform Asset Management tasks unassociated with her Job Description and particular line of noted expertise. **(Exhibit(s): "L")**

257.   Plaintiff performed tasks associated with her Job Description, and tasks associate with Defendant Charles Cullen's Job Description for much less pay than any of Plaintiff's previous managers, Joseph Viciere and Michael Carballa, in all with hopes Plaintiff would eventually get promoted to the proper paying bracket associated with all the work Plaintiff performed while at PCU. **(Exhibit(s): "I", "L")**

258.   Defendant Kimberly Rogers had made the decision, together with all other Defendants, and other persons not yet named to not hire Plaintiff to the position associated with Plaintiff's tasks Plaintiff had performed now for more than two years.

259.   Defendant Kimberly Rogers hired by Charles Cullen circa 2019, upon opening the position of employment Plaintiff had been performing for close to three years (Asset Manager), instead of fairly promoting Plaintiff to the proper paying bracket or position of what Plaintiff was already performing, Defendants instead gave Elizabeth Walton, a new hire, the post.

260.   Defendants then demanded that Plaintiff should train Defendant Kimberly Rogers and the "New Hire", Elizabeth Walton, to perform the task Plaintiff had already been performing, *together with Plaintiff's contractual tasks as GIS Analyst.* **(Exhibit(s): "L")**

261.   All Defendants ought to know the law.

262.   All Defendants, at the very least, ought to know their behavior was grossly calculated and aimed to target Plaintiff.

263.   All Defendants had an opportunity to cure the matter outside of court.

264.   *All Defendants had an opportunity to object to any or all the points in the Administrative* Process presented to them three times prior to this suit against them.

### COUNT 2:
### DURESS/COERCION

265.   Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general *facts of the case and allegations, and legal precedents, and facts and allegations in the* Counts.

266.   Plaintiff has been performing managerial duties since circa 2017. **(Exhibit(s): "I", "L")**

267.   Defendant Kimberly Rogers after attaining the position of Engineering Manager and manager of the PCU GIS team, attempted to coerce Plaintiff:

268.   *Coerce Plaintiff to continue to perform the duties Kimberly Rogers had been hired to do.*

269.   *Coerce Plaintiff to train the "New Hire", Elizabeth Walton, to perform what Elizabeth* Walton had been hired to do.

270.   Defendant Kimberly Rogers engaged in harassment and coercive tactics against Plaintiff through the production of unbiased, discriminatory, derogatory allegations in employee *disciplinary reviews for the purpose of damaging Plaintiff in the eyes of PCU management.* **(Exhibit(s): "M")**

271.   Defendant Kimberly Rogers was hired by Charles Cullen.

272.   Defendant Charles Cullen gave Kimberly Rogers the go on damaging Plaintiff through false allegations and retaliatory tactics dispensed through disciplinary reviews with Defendant Barbara Hitzemann. **(Exhibit(s): "K", "M")**

273.   Defendants Kimberly Rogers and Barbara Hitzemann gathered with Plaintiff to go over a disciplinary review where all the allegations had been found unfounded and the entire disciplinary review was to be revised and reviewed by all the involved parties later. **(Exhibit(s): "M")**

274.    Defendants ignored Plaintiff's request to go over the revised version of **Exhibit "M"**, but

Defendants ignored her petition.

275.    *Defendants want Plaintiff to give up rights by consent even though they refuse to make a*

*wrong right* – sexual harassment and bullying. **(Exhibit(s): "K", "M", "O", "P")**

**COUNT 3:**
**CONSPIRACY AGAINST RIGHTS – TITLE 18 U.S.C. Section 241**

276.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

*facts of the case and allegations, and legal precedents, and facts and allegations in the*

Counts.

277.    Defendants act together in the perpetration of conspiracy against the Plaintiff's rights.

**(Exhibit(s): "K", "M", "O", "P" and "L")**

278.    Defendant Charles Cullen and the other Defendants conspired to coerce Plaintiff into

*resigning without cause.*

279.    Defendant Charles Cullen gave an official "manager of the year" award to Defendant

Kimberly Rogers even though Kimberly Rogers had not managed the PCU GIS department

and depended on Plaintiff to do the managing while also adhering to her duties as GIS

Analyst.

280.    *"An act does not make a man a criminal, unless his intention be criminal."*

**COUNT 4:**
**DISCRIMINATION**
**Title VII of the Civil Rights Act of 1964**

281.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts. **(Exhibit(s): "A")**

**COUNT 5:**
**UNLAWFUL EMPLOYMENT PRACTICES**
**42 U.S. Code § 2000e–2**

282.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts. **(Exhibit(s): "A")**

**COUNT 6:**
**CONSPIRACY TO COMMIT FRAUD**

283.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

284. All the Defendants know the facts in the Florida statutes, codes, Florida constitution *concerning avoiding Discrimination in the public workplace and responsibilities to their* offices.

285. All the Defendants know the facts pertaining to deprivation of Plaintiff of the truth through deceptive use of omission and workplace discrimination.

**COUNT 7:**
**HARRASSMENT AND/OR TRESPASS**

286. Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general facts of the case and allegations, and legal precedents, and facts and allegations in the Counts.

287. After multiple meetings with Plaintiff regarding her religious views and conduct in the workplace, these Defendants continued to:

   a) Disregard Plaintiff's:

      i. Harassment against her

      ii. Bullying by co-worker

      iii. Unfair and unreasonable demands **(Exhibit(s): "K", "M")**

      iv. Unfair workload disparate to pay others with the same workload or less workload would get paid.

288. After multiple correspondence since October 2020 by Administrative Process and Settlement counteroffer, Defendants have refused to make a wrong right. **(Exhibit(s): "C" through "G", and "Q")**

289. Defendants' lack of performance to cure the matter has caused undue harm to this Plaintiff.

290. Defendants' lack of performance to cure the controversy constitutes harassment. **(Exhibit(s): "C" through "G")**

291. Defendants' lack of performance to cure the controversy constitutes a trespass on Plaintiff's personal pursuit of happiness, property, life. **(Exhibit(s): "C" through "G", "K", "M", "O", "P" and "L")**

292. Defendants' lack of performance to cure this controversy has deprived Plaintiff's family the natural rights of pursuit of happiness, property, life. **(Exhibit(s): "C" through "G", "K", "M", "O", "P" and "L")**

## COUNT 8:
## DEPRIVATION OF RIGHTS – TITLE 18 U.S.C. Section 242

293.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

294.    Defendants' lack of performance to cure this controversy has deprived Plaintiff the

natural rights of pursuit of happiness, property, life. **(Exhibit(s): "C" through "G", "K",**

**"M", "O", "P" and "L")**

295.    Defendants' lack of performance to cure this controversy has deprived Plaintiff the

natural rights of pursuit of happiness, property, life. **(Exhibit(s): "C" through "G", "K",**

**"M", "O", "P" and "L")**

## COUNT 9:
## VIOLATION OF THE DECLARATION ON
## THE RIGHTS AND DUTIES OF MAN

296.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

297.    United States Treaties and International Declarations bind all citizens to them.

298.    Defendants do not adhere to proper behaviors called for in Treaties.

## COUNT 10:
## TARGETING – 42 U.S. Code § 2000e–2 or 3

299.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 11:
## CONSTRUCTIVE DISMISSAL – 42 U.S. Code § 2000e–2 or 3

300.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 12:
## RELIGIOUS BIAS, PERSECUATION OR DISCRIMINATION
## 42 U.S. Code § 2000e–2 or 3

301.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 13:
## UNEQUAL EMPLOYMENT OPPORTUNITY
### 42 U.S. Code § 2000e–2 or 3

302.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 14:
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### EQUAL PAY ACT OF 1963 – 29 U.S.C. Section 206

303.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 15:
### VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009

304.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 16:
### VIOLATION OF FLORIDA CIVIL HUMAN RIGHTS ACT

305.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 17:
### VIOLATION OF FLORIDA STAT. XLIV, CHAP. 760, SECT. 51

306.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

## COUNT 18:
### VIOLATION OF FLORIDA STAT. XLVI, CHAP. 817, SECT. 29 & 569

307.    Plaintiff realleges and restates the foregoing jurisdictional elements, actual or general

facts of the case and allegations, and legal precedents, and facts and allegations in the

Counts.

**WHEREFORE**, Plaintiff moves this Court to rule in Plaintiff's favor together with all other

relief(s) as the Jury sees justified:

308.    The <u>DAMAGES</u> (DMs) presented in the Administrative Process (hereon "AP")

established the following in ledger accounting form if Defendants did not respond to the APs, which they did not, but Plaintiff now demands in the foregoing cause of actions against them:

309.   **Punitive damages** *intended to reform or deter the Defendants, and others, from engaging* in conduct like that which formed the basis of the lawsuit.

310.   **Pain and suffering** compensatory damages for conduct that was **especially** outrageous, i.e., Bullying, Retaliatory Tactics, Coercion, Unfair Employment Practices, **Religious** Bias.

311.   **Exemplary damages** for willful, malicious, violent, oppressive, fraudulent, wanton, or *grossly reckless, acts or malfeasance.*

312.   **Pay triple** (3X) damages for **conspiring** to do the acts as listed in this claim, to the sum of **$7,000,000.00** X 3 = **$21,000,000.00**, from each Defendant.

313.   **$21,000,000.00**, total, lawful money, from each Defendant, plus any damages that the Jury finds fit to deter such acts upon others.

314.   *Criminal charges against each Defendants in accordance with the counts' penalties so that what happened to Plaintiff may not happen to someone else.*

315.   Recommendation by the Court or Jury to petition the U.S. Attorney General Office, Civil Rights Division / Criminal Section at 950 Pennsylvania Avenue, Northwest, Washington, DC 20530, to investigate and/or prosecute the Defendants under Title 18 U.S.C. Sections 241 and 242 *of the Federal Statutes.*

316.   Recommendation by the Court or Jury to petition the State of Florida Attorney General Office to investigate and/or prosecute the Defendants under Florida Statutes, Title XLIV, Chapter 760, Section 51 (Discrimination in the Treatment of Persons), and, but not limited to, Florida Statutes, Title XLVI, Chapter 817, Sections 29 & 569 (Fraudulent Practices).

## CERTIFICATE OF SERVICE

UNDER PENALTY OF PERJURY, I CERTIFY that a copy of the foregoing was provided by regular U.S. mail, email, process service, or e-file to the Defendants' agent, offices, or persons according to the rules of procedure.

Jerri Torres 813-298-4559
Without the United States - Title 28 USC § 1746