IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TORRES, JERRI "MEGAN",
     Plaintiff,                    Case No.: 8:21-cv-892-TBP-JSS

v.

PASCO COUNTY BOARD OF
COUNTY COMMISSIONERS,
     Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND SUPPORTING MEMORANDUM OF LAW

Pasco County employed Jerri Torres ("Torres") as a Geographic Information

Systems ("GIS") Analyst in its Utilities Department.[1] Torres claims that a random

Pasco County employee whom Torres did not know:

- In in April 2017, said to Torres: "Hey, what are you carrying a rifle
  for?" when Torres exited the building carrying surveying equipment;

- The next day, when Torres exited through the same door without her
  survey equipment, asked Torres: "Where is your rifle today" "What do
  you need a rifle for?"

- Two months later on June 13, 2017, when Torres was walking through
  the lobby, the same employee said "Hey, give us a smile."

Torres complained to Human Resources, who talked to the employee. Torres

never spoke to or saw the employee again. Thus, the alleged "harassment" ended

*three and a half* years before Torres filed her charge of discrimination and Torres'

harassment claim is time-barred.  Torres also cannot establish that the 3 innocuous

---

[1] The proper defendant in this action is Pasco County.

comments by a passerby employee (a) were based on sex; (b) were severe or pervasive; or (c) that the County failed to take prompt, remedial action that ended any further contact. As to Torres' other claims: Torres, who supervised no one, claims a male supervisor over all other GIS functions for the *entire* County was paid more than Torres because he is male. Torres cannot establish that she was similarly-situated or that any difference in pay was based on her gender. Torres also references in the Complaint, but does not plead, a claim for her non-selection for the Asset Manager Position over another *female* applicant who, unlike Torres, had a PhD. And, while Torres has not properly pled sex-based failure to promote (also time-barred) or retaliation claims (and for that reason alone summary judgment is warranted), Torres cannot establish those claims as a matter of law because the County had legitimate, non-discriminatory and non-retaliatory reasons for its employment decisions, and Torres cannot establish that those reasons were pretext for an illegal reason.

## I.      STATEMENT OF UNDISPUTED FACTS[2]

### A.      Torres' Employment with Pasco County

1.      In May 2016, Pasco County hired Torres as a GIS Analyst for the Utilities Department ("PCU"). (Torres at 31:1-25, 32:1-2). As a GIS Analyst, Torres was responsible for creating maps, of Pasco County's water pipeline infrastructure, in both digital and physical format, for PCU's Engineering Department. (Torres at 32:7-

---

[2]  These facts are "undisputed" solely for purposes of this Motion for Summary Judgment.

24, 34:15-20, 37:17-25, 38:1-2).

2. When the County hired Torres, Torres was the only GIS Analyst at PCU. (*Id.* at 33:14-16). While the County has a GIS department that oversees mapmaking for the entire County as a whole, Torres' GIS work was limited to mapping the County's water pipelines. (*Id.* at 37:12-25, 38:1-2, 39:1-9).

3. At first, her direct supervisor was Engineering Manager Joseph Viciere who, in turn, reported to Director of Engineering Michael Carballa. (Torres at 34:13-20; 126:25-127:3; 128:19-22). Because Viciere and Carballa were not experienced in GIS, they relied on GIS Manager Jeremy Edwards[3] to help train Torres. (Torres at 34:22-35:4, 40:2-8). Engineering Manager Viciere left shortly after the start of Torres' employment; for a time, Torres reported directly to Director Carballa and after Kimberly Rogers was hired as Engineering Manager, Kim Rogers became Torres' direct supervisor. (Torres at 129:2-5).

**B.    Pasco County Prohibits Harassment and Retaliation, and Provides Multiple Avenues to Report Perceived Violations.**

4. Pasco County's provides employees with a complaint procedure to report discrimination and/or harassment to Human Resources or to the County Administrator. (Hitzemann at 6:2-3; Hitzemann Dec. at ¶ 4). Pasco County prohibits retaliation for making complaints and ensures a prompt investigation with corrective action, when appropriate. (Hitzemann Dec. at ¶ 5).

---

[3] Edwards was not Torres' supervisor and he did not work in PCU. (Torres at 35:7-11). In his capacity as GIS Manager for the entire county, Edwards supervised a separate team of five employees. (*Id.* at 98:22-25).

**C.**     **Torres' 2017 Complaint to Human Resources about 3 Innocuous Comments by a Passerby Employee**

5.     On June 14, 2017, Torres complained to Human Resources Director Barbara Hitzemann that an employee, whom Torres did not know or identify, had harassed her. (Torres at 51:21-25, 52:13, Ex. 1; Hitzemann at 30:18-25, 31:1-10). Torres told Hitzemann that the unnamed employee had tried to engage Torres in conversation when she saw him in passing on three occasions: (Torres at 56:7-11, Ex. 1).

- In April 2017, Torres was exiting the PCU building carrying survey equipment. The employee asked Torres in a "suggestive tone," **"Hey, what are you carrying a rifle for?"** Torres did not respond. (*Id.* at 80:18-25, 81:1-16, Ex. 2).

- The following day, Torres exited through the same door without her survey equipment and the employee stopped working and asked her, **"Where is your rifle today" What do you need a rifle for?"** Torres did not respond. (Torres at 81:23-25, 82:1-23, Ex. 2) and

- Two months later on June 13, 2017, Torres was walking through the lobby when she encountered the unnamed employee; the employee said **"Hey, give us a smile."** Once again, Torres said nothing. (Torres at 82:24-5, 83:1-16, Ex. 2).

**D.**     **Human Resources Director Promptly Investigates Torres' Complaint**

6.     That same day (June 14, 2017), Hitzemann began an investigation. (Torres at 77:3-19, 83:17-21, Ex. 2; Hitzemann at 32:14-25, 33:1-5).

7.     Given the location of the unnamed employee, Hitzemann guessed that the employee complained of was maintenance worker Ed Congo. Hitzemann told Congo not to engage Torres in conversation moving forward, or he would be subject to disciplinary action. (Torres at 86:25, 87:1-23, Ex. 2; Hitzemann at 32:14-25, 33:1-

4

10; Congo at 7:12-16).

8.     Hitzemann met with Torres on June 15, 2017, and explained that she did not view another employee's benign attempts to engage her in conversation in passing as inappropriate since none of his remarks were sexual, suggestive, or offensive but Hitzemann told Torres that she had talked to the employee and told him not to speak to her.  (Torres at 83:17-25, 84:1-2; Ex. 2; Hitzemann at 32:14-25).

9.     Hitzemann also instructed Torres to inform her if Congo violated this directive (which he did not). (Torres Ex. 2; Hitzemann Dec. at ¶ 19).  After Hitzemann informed Torres of her communication with Congo, Torres had no further interaction with Congo and never saw Congo again.  (Torres at 87:19-88:12).

10.    Torres never received any other "cat calls" from anyone at PCU, and Pasco County received no further complaints of sexual harassment from Torres. (Torres at 87:24-25, 88:1-12).

### E.     Torres Refuses to Cooperate with New Asset Manager and Co-Workers after Torres Is Not Selected for Asset Manager Role

11.    In 2019, Torres applied for an Asset Manager position. (Torres at 139:6-19).  The County considered the applications of Torres, along with Dr.  Elizabeth Walton, an outside candidate. (Applegate 26:21-25).  Rogers and former Utilities Engineering Director Charles Cullen selected Walton who holds a PhD in Geography because they considered Dr. Walton to be more qualified for the position than either Torres or Lama, an internal male applicant who also applied. (Torres at 139:23-25; Applegate 27:22-28:1).

12.     Following Torres' non-selection for the Asset Manager position, Rogers
began to receive complaints about Torres from Torres' co-workers and even other
County employees outside of PCU. (Hitzemann Dec. at ¶ 21).  Specifically, Rogers
noticed that Torres was no longer willing to collaborate or assist others within her
department, particularly Dr. Walton.  (*Id.*).

13.     Examples included Torres blatantly telling Dr. Walton that she would
not assist her in locating certain files, and Torres responding "welcome to Pasco
County" when Dr. Walton asked a simple question regarding a delay in upgrading
software.  (Hitzemann Dec. at ¶ 23).

14.     Cullen also noticed that Torres began to take on a "not my job" type of
attitude.  (Hitzemann Dec. at ¶¶ 22, 24, Ex. B). Cullen witnessed what he believed to
be Torres interacting poorly with her co-workers.  (*Id.* at Ex. B).  On one occasion,
Torres wrote a negative report on a fellow GIS Analyst despite not being the
employee's supervisor. (*Id.* at Ex. B).

15.     As time passed, Torres became blatantly and increasingly hostile
towards Dr. Walton.  (Torres at 146:11-16; Hitzemann at 61:9-21).  As Torres' direct
supervisor, Rogers sought guidance from Hitzemann about managing Torres'
increasingly difficult workplace behavior.  (Hitzemann Dec. at ¶ 25).

16.     On January 13, 2020, Rogers provided Torres an Interoffice
Memorandum outlining Torres' behavioral issues. (Hitzemann Dec. Ex. A) Rogers
advised Torres that Torres' "inability to get along with [her] coworkers," along with

other behavioral issues, including her hostile and unproductive conduct, would no longer be tolerated. Rogers told Torres that if she could not remain cordial with her work colleagues and Dr. Walton, Torres would be subject to possible disciplinary action including termination of her employment. (Hitzemann Dec. at ¶ 26, Ex. B).

17. Unfortunately, Torres did not improve. In Torres' 2020 annual Employee Evaluation, Cullen noted that although Torres had strong technical capabilities, she failed to embrace a culture of teamwork within the department. (Hitzemann Dec. at ¶27, Ex. B).[4] He went on to state that Torres had a poor working relationship with the team and that, despite coaching, had shown no meaningful progress. (*Id.*).

18. Cullen also noted in Torres' 2020 Employee Evaluation that Torres "use[d] the wrong tactics to work with the team and resolve conflict" and that her "work quantity significantly reduced after [sic] did not receive the Asset Management position." (Hitzemann Dec. at ¶27, Ex. B). Cullen concluded:

> **[Torres] demonstrates an apparent inability to move away from a 'comply or be punished' relationship with her direct teammates. Additionally, she routinely seeks to fight over routine management initiatives. Has sought to undermine management decisions with team members.**

(*Id.*).

---

[4] Notably, Cullen was tasked with providing Torres' evaluation because Rogers had resigned her position with Pasco County. Rogers told Cullen and Hitzemann that she was resigning primarily because she could not tolerate or manage Torres' behavior within the department. (Dec. Hitzemann at ¶33).

**F.**     **Torres Admits to Secretly Recording Her Colleagues and Resigns in Lieu of Termination.**

19.    After receiving her Employee Evaluation in October 2020, Torres requested to meet with Cullen to discuss the behavior problems he noted in her evaluation as well as her ongoing conflicts with Dr. Walton and her colleagues. (Hitzemann Dec. ¶ 28, Ex. C; Torres 184:9-19).

20.    Torres then informed Cullen that she had secretly recorded certain interactions between herself and her colleagues to show she did not have personality conflicts with her co-workers. (Torres at 186:11-25, Hitzemann Dec. ¶ 29, Ex. D).

21.    Considering that Torres' workplace behavior had not improved and, in reality, had worsened as she was now resorting to recording her conversations with her co-workers without their permission, Hitzemann presented Torres with two options on October 23, 2020: (1) to attend a pre-disciplinary hearing to address the actions of secretly recording her colleagues and explain why she should not be terminated, or (2) to resign from her employment. (Torres at 177:16-21, 185:16-25, 186:1-25, 187:12-25, 188:1-15; Hitzemann at 11:1-11; Hitzemann Dec. at ¶ 30, Ex. D).

22.    Torres ultimately chose to resign on October 26, 2020. (Torres at 169:2-6, 177:16-21; Hitzemann Dec. at ¶30, Ex. D).

## II.    MEMORANDUM OF LAW

**A.    Torres' Claims Are Untimely and Must Be Dismissed.**

Torres failed to file a charge with the EEOC related to the 3 innocuous comments by Ed Congo (his alleged-in-the-Complaint "cat calls") within 365 days of their occurrences or when they admittedly ended and she never spoke to Congo again.  Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge. *Jordan v. City of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008). For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act (365 days under the FCRA). *Pedrioli v. Barry Univ., Inc.*, No. 6:17-cv-00577-Orl-40GJK, 2018 WL 538743, at *2 (M.D. Fla. Jan. 24, 2018); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing 42 U.S.C. § 2000e–5(e)(1)). Accordingly, only those claims arising within 300 (or 365 under the FCRA) days prior to the filing of the EEOC's discrimination charge are actionable. *Joe's Stone Crabs, Inc.,* 296 F.3d at 1271.

Torres filed her Charge of Discrimination with the EEOC on February 4, 2021.  [DE 62 ¶ 24].  Accordingly, any discrete acts of alleged discrimination and/or harassment occurring on or before April 10, 2020, are untimely.  *Pedrioli*, 2018 WL 538743 at *2. Here, the record evidence establishes that the alleged sexual harassment occurred and ended on or before June 15, 2017, and that Torres did not experience any alleged sexual harassment after that date. (Torres at 191:10-23, Ex. 2). Accordingly, Torres' had to file a Charge of Discrimination for any sexual

harassment claim on or before April 11, 2018 - **nearly three (3) years before any such charge was actually filed by Torres.** Accordingly, Torres' sexual harassment and hostile work environment claims must be dismissed as time-barred.

### B. Pasco County Is Entitled to Summary Judgment as a Matter of Law on the Merits.

The summary judgment standard is well-known and is "mandate[d]" where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where there is "no *genuine* issue of *material* fact," summary judgment is proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in the original).

### C. Torres Cannot Prove Hostile Work Environment.[5]

Torres' sole allegation in support of her sexual harassment claim is that Congo subjected her to innocuous remarks that she deemed inappropriate on three separate occasions. (Torres at 56:7-11, Ex. 1). To establish her claim, Torres must prove (1) she belongs to a protected group; (2) was subjected to unwelcome harassment; (3) based on sex; (4) which was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive work environment; and (5) a basis exists for holding the County liable. *Johnson v. Booker T. Washington Broad. Serv.,*

---

[5] As discussed above, Torres brought a count of sexual harassment (Count 1), which appears to be a claim for a sexually hostile work environment that is premised on remarks made to her by Congo, and a separate count of a hostile work environment (Count 2), which is premised on her perceived mistreatment by her colleagues that is not based on any protected characteristic. Defendant addresses both of these claims within this section.

*Inc.*, 234 F.3d 501, 508 (11th Cir 2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-63 (1998)); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000); *see Ward v. Casual Rest. Concepts, Inc.*, No. 8:10-CV-2640-EAK-TGW, 2012 U.S. Dist. LEXIS 26659, at *7 (M.D. Fla. Mar. 1, 2012) (Title VII and FCRA claims are analyzed the same). Here, Torres' *prima facie* case fails for the following reasons:

### 1. The Alleged Harassment Was Not Based on Sex.

Torres offers no evidence suggesting that Congo's remarks implicated her gender in any way and, therefore, Torres cannot "prove that but for her sex, she would not have been subject to sexual harassment" by Congo. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1305 (11th Cir. 2016) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). As set forth above, the three instances of alleged "sexual harassment" advanced by Torres are as follows:

- "Hey, what are you carrying a rifle for?"
- "Where is your rifle today?"
- "Hey, give us a smile."

(Torres Ex. 2). Put simply, none of the three remarks reference or allude to Torres' gender. *See, e.g., Smith v. State of Florida Dept. of Corrections*, No. 2:07-cv-631, 2009 WL 1490899, at *8 (M.D. Fla. May 27, 2009) (plaintiff failed to establish that job criticism created hostile work environment where there was no evidence it was based on protected characteristic). Instead, Congo made three innocuous comments in an effort to engage Torres in conversation. To be clear, Title VII prohibits harassment only when **based on a complainant's protected category** *Reeves v. C.H. Robinson*

*Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010). Because Torres cannot establish the alleged harassment by Congo was based on her sex, she cannot establish a claim for a hostile work environment. *E.g., Byrd v. Postmaster Gen.*, 582 F. App'x 787, 792 (11th Cir. 2014) ("Most of the complained-of harassment was not based on Byrd's sex and, thus, does not satisfy the third element of a hostile work environment claim."); *Mitcham v. Univ. of S. Fla. Bd. of Trs.*, 71 F. Supp. 3d 1306, 1317 (M.D. Fla. 2014) (plaintiff could not support a hostile work environment claim where she offered no statements with "race- or gender-based content").

Likewise, Torres' claim that she was subjected to a hostile work environment due to the alleged defamatory claims made about her performance similarly fails as there is no evidence to suggest that any alleged false claims were based on Torres' sex. *See Byrd*, 582 F. App'x at 792; *Mitcham*, 71 F. Supp. 3d at 1317. As a matter of fact, the alleged false claims about her performance were made ***by two female colleagues*** and focused exclusively on Torres' work behavior. (Torres at 143:3-21). Torres' 2020 Performance Evaluation acknowledged her technical proficiency but emphasized that her workplace behavior was impacting her ability to work with her colleagues. Such a performance evaluation in no way implicates Torres' gender. Accordingly, Torres' sexual harassment claim fails.

### 2. *The Alleged Harassment Was Neither Severe Nor Pervasive.*

To show severity or pervasiveness, both an objective and subjective component must be present. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246. Torres

must prove not only that she was subjectively offended by her work environment, but that a reasonable person would also find it "hostile or abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993). To assess objectivity, the courts consider the frequency/severity of the conduct, if it is physically threatening/humiliating or merely an offensive utterance, and if it unreasonably interferes with the employee's job performance. *Hulsey v. Pride Restaurants,* LLC, 367 F.3d 1238, 1247 (11th Cir. 2004) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). *Mendoza*, 195 F.3d at 1246; *see Mitchell v. Pope*, 189 F. App'x 911, 913 (11th Cir. 2006) (same).

The three aforementioned instances of alleged "sexual harassment" are insufficient to support Torres' claims. Congo made three remarks to Torres – two of which were questions about her survey equipment (i.e. the "rifle") and the third was an invitation to "smile." (*Id.*). It is well-settled that "[i]nnocuous statements or conduct . . . that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (2000). Here, the three alleged comments made by Congo over a 2-month period are simply not objectively severe or pervasive. *See, e.g., Laincy v. Chatham County Bd. of Assessors*, 520 F. App'x 780, 783 (11th Cir. 2013) (upholding grant of summary judgment for county, and finding that three innocuous comments by coworker asking if plaintiff was dating anyone were insufficient to establish harassment). Much like the comments addressed in *Laincy*, Congo's alleged statements were not threatening,

humiliating, or offensive, and they did not interfere with Torres' job performance. *Id.* As a result, Torres' claims must fail.

Torres' remaining broad allegations of allegedly harassing conduct similarly fail. To the extent Torres relies on two allegedly "defamatory reviews," such reviews were neither severe nor pervasive. *See Callahan v. City of Jacksonville, Fla.*, No. 316CV01348J20JBT, 2019 WL 11486418, at *8 (M.D. Fla. Mar. 18, 2019), aff'd, 805 F. App'x 749 (11th Cir. 2020) (job criticism that did not impact the terms and conditions of employment was neither severe nor pervasive).

### 3. There Is No Basis to Hold the County Liable for the Alleged Harassment by Congo.

Even assuming that Torres could prove the alleged harassment was based on her sex and was sufficiently severe or pervasive (which she cannot), Torres cannot establish that the County is liable. The County can only be liable if it had actual knowledge or constructive knowledge due to the severity or pervasiveness of the harassment, and failed to take prompt remedial action. *Quick v. Birmingham*, 346 F. App'x 494, 496 (11th Cir. 2009). "Without such notice, whether constructive or actual, there is ***no basis*** for holding [the County] liable for the harassment." *Terrell v. Paulding Cty.*, 539 F. App'x 929, 932 (11th Cir. 2013) (emphasis added).

Hitzemann received Torres' sexual harassment complaint on June 14, 2017. (Torres at 51:21-25; 52:13); Ex. 1). Hitzemann promptly initiated her investigation into Torres' claims and met with her to discuss them the very next day. (Torres at 83:17-21; Ex. 2). Upon learning that the alleged harassment consisted of the three

14

remarks referenced above, Hitzemann informed Torres that such conduct, while perhaps subjectively offensive to her, did not amount to sexual harassment under state or federal law. (Torres at 83:17-25; 84:1-2; Ex. 2). Even so, Hitzemann instructed Congo not to speak with Torres again and Hitzemann reported this to Torres and advised Torres to reach out to her in the event that Congo engaged her again in any way.  (Torres Ex. 2). Following the conclusion of Hitzemann's investigation, Torres experienced no more alleged "harassment" and had no further interaction with Congo whatsoever. (Torres at 87:19-25; 88:1-12).

Torres' subjective dissatisfaction with the County's failure to take her preferred course of action (disciplinary action against Congo) does not affect the County's liability. *See Walton v. Johnson & Johnson Servs.*, 203 F. Supp. 2d 1312, 1323 (M.D. Fla. Apr. 5, 2002) ("Plaintiff is dissatisfied with both the process and the results of the investigation. She also believes that Defendants should have disciplined [the harasser] differently. None of Plaintiff's subjective opinions or perceptions . . . create issues of material fact . . . ."). Here, the County had no knowledge of Congo's comments to Torres until Torres reported the three comments to Hitzemann. Under these facts, there is no basis upon which to hold the County liable for a hostile work environment as the County promptly addressed Torres' sexual harassment complaint. *See Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-CV-298-J-34TEM, 2013 WL 11327134, at *31 (M.D. Fla. Oct. 18, 2013), aff'd sub nom. *Moore v. Shands*

*Healthcare, Inc.*, 617 F. App'x 924 (11th Cir. 2015) (like here, no liability where defendants took prompt remedial action to reported incidents of harassment).

**D.    Torres Fails to Identify a Proper Comparator in Support of Her Equal Pay Act Claim.**

A female employee demonstrates a *prima facie* case of an Equal Pay Act violation by showing that her employer paid male employees more for equal work.  "Equal work" means jobs which require "equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003). Although formal job titles or descriptions may be considered, they are never dispositive and the controlling factor in the assessment of whether two jobs are substantially equal must be the actual job content. *Arrington v. Cobb Cty.*, 139 F.3d 865. 876 (11th Cir. 1998). The controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content. *Id.* The "standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (the district court properly held that the plaintiff failed to establish that she performed work which was substantially equivalent to the work of male "outside sales" agents, where the plaintiff alleged that she occasionally filled in for an "outside sales" agent).

Torres has identified GIS Supervisor Jeremy Edwards as her sole alleged comparator. [DE 62 at pg 2]; (Torres at 155:5-8). However, Edwards' duties are not substantially equal to Torres' duties as a GIS Analyst or even similar. (Torres at 36:2-

25, 37:12-25, 38:1-25, 39:1-9, 98:22-25; Hitzemann Dec. at ¶10). First, Edwards

supervises all GIS Analysts in Pasco County; Torres might have occasionally trained

or helped less experienced colleagues or helped with evaluating them but she does

not hire, discipline, fire, or direct the work of 5 plus subordinates overseeing the

entire County GIS function. (Torres at 37:12-25, 38:1-25, 39:1-9; Hitzemann Dec. at

¶10). Torres worked for Pasco County Utilities and limited her GIS work to Pasco

County's water pipelines. (*Id.*). The mere fact that both Torres and Edwards are

engaged in GIS work does not make their positions substantially similar. *See, e.g.,*

*Blackman v. Fla. Dep't of Bus. & Pro. Regul.*, 599 F. App'x 907, 911 (11th Cir. 2015)

("Although Mr. Kogan and Ms. Blackman are both bureau chiefs, it is the "actual

job content," not job titles or job descriptions that is controlling.") Indeed, their work

was so different that Edwards and Torres rarely interacted while on the job. (Torres

at 40:2-12). They worked in separate departments and with different teams. (Torres

at 36:2-4, 41:16-19, 98:10-25). Likewise, Edwards was a supervisor who typically

oversaw five employees while Torres had no subordinate employees who reported to

her. (Torres at 39:2-6. 98:3-5; Hitzemann Dec. at ¶ 10). While Edwards delegated

work related to mapmaking for the County, Torres was responsible for creating maps

*herself* of the County's water pipelines. (Torres at 37:3-25; 38:1-9). Put simply, Torres

and Edwards did not perform equal work and, therefore, were not entitled to equal

pay. *See Evans v. Books-A-Million*, 762 F.3d 1288, 1298 (11th Cir. 2014) (employee

could not show similarity of work between herself and alleged comparator because she did not perform the additional tasks her alleged comparator performed).

### E. Claims Not Pled by Torres But Vaguely Referenced in the Second Amended Complaint.[6]

*i. Torres Did Not Plead a Failure to Promote, or Retaliation Claim in Her Second Amended Complaint.*

To the extent Torres claims she was subjected to sex-based discrimination [DE 62 at pgs. 5, 8, 10, 17] or retaliation [DE 62 at pgs. 1, 2, 6, 7, 8, 12, 13, 16], such claims must be dismissed as a matter of law because Torres did not plead either a failure to promote based on sex or retaliation claim in her Second Amended Complaint. Thus, Torres cannot now bring such claims against the County. Federal Rule of Civil Procedure 8 mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 10 requires that a plaintiff "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence . . . **must be stated in a separate count** . . . ." Fed. R. Civ. P. 10(b).

In *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 980 n.7 (11th Cir. 2008), the Eleventh Circuit explained that Rules 8 and 10:

---

[6] While Torres has only brought three counts for sexual harassment, hostile work environment, and pay discrimination, respectively, she has included allegations throughout her Second Amended Complaint referencing failure to promote based on sex, and retaliation. Any claims for failure to promote based on sex, and retaliation were not properly pled and must fail. However, Defendant also addresses these claims on the merits in an abundance of caution.

> work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

Where a plaintiff, as here, fails to separate discrete claims of discrimination into separate counts, the plaintiff has failed to comply with Rules 8 and 10. *Id.* The Eleventh Circuit held in *Palmer v. Alberton's LLC*, 418 F3d. Appx. 885, 889 (11th Cir. 2011) that a plaintiff who did not articulate a claim of hostile work environment separately from his disability discrimination claim, was not permitted to maintain such a claim at the summary judgment stage.

Importantly, this Court specifically addressed the procedure for pleading these claims in its August 11, 2021 Order on Defendant's Motion to Dismiss. (DE 60). In doing so, this Court instructed Torres to plead a separate count for each claim and to allege facts in support of each claim's *prima facie* case. Despite the Court's clear instructions, Torres did not follow the Court's directives with respect to her failure to promote, or retaliation claims. [DE 60 at pg. 9-10, 12]. This Court more recently clarified that Torres' current suit includes claims for sexual harassment, hostile work environment, retaliation, and sex discrimination. [DE 136]. Notwithstanding, any attempt by Torres to assert unpled claims at the summary judgment stage should be rejected.

*ii.* *Torres Cannot Establish a Claim for Sex Discrimination Based on Her Failure to Be Promoted to the Asset Manager Position instead of another Woman.*

Insofar as Torres purports to bring a claim for sex discrimination based on a failure to promote her to Asset Manager,[7] this claim is also **time-barred**, and similarly fails on the merits. In a failure to promote claim a plaintiff may establish a *prima facie* case by showing that: (1) she is female; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) the employer promoted other equally or less qualified **male** employees. *Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 894 (11th Cir. 2015). Rogers and Cullen selected a more qualified *female* applicant for the Asset Manager role over two candidates--one male and one female-Torres and Lama. The applicant selected, Dr. Rogers, has a PhD in Geography. (Torres at 149:17-25, 140:1-25). Since Torres was not rejected for the position in favor of a male candidate, summary judgment is warranted. *See, e.g., Martin v. City of Atlanta, Ga.*, 579 F. App'x 819, 825 (11th Cir. 2014) (finding that individual promoted to position was within same protected category as appellants and therefore could not form the basis for a failure to promote claim).

---

[7] Torres' EEOC Charge of Discrimination contains no factual allegations of sex-based discrimination and this claim should be dismissed for this reason alone. *See Powers v. Avondale Baptist Church*, No. 3:06CV363J33MCR, 2007 WL 2310782, at *3 (M.D. Fla. Aug. 9, 2007) ("A plaintiff cannot raise a claim in court that he did not raise in his EEOC charge unless it is like or related to the charge's allegation.").

*iii.* *Torres Cannot Establish Retaliation, and the County is Entitled to Summary Judgment as a Matter of Law.*

To the extent, Torres claims that the County retaliated against her for her 2017 sexual harassment complaint by disciplining her in January 13, 2021 Interoffice Memorandum and her 2020 Performance Evaluation or providing notice of possible termination, the County is entitled to summary judgment on her retaliation claim (DE 62 at pg. 2).

**1.** **Torres Cannot Establish a Causal Connection Between Her 2017 Complaint about Congo and Alleged Adverse Actions in 2020.**

To prove retaliation, Torres must show she (1) engaged in protected expression, (2) suffered a materially adverse action, and (3) there is a causal link between the protected expression and the adverse action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Retaliation claims must be proven under traditional principles of but-for causation, which means "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Subjective conclusions create no genuine dispute. *Id.*

First, there is no temporal connection between Torres' harassment complaint to Hitzemann on June 14, 2017, and Torres' October 26, 2020 resignation in lieu of a pre-termination hearing resulting from multiple complaints by managers and co-workers about Torres' behavior at work. A three year gap from complaint to adverse action is too long to support any causal connection as a matter of law. *See e.g.*,

*Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 903 (11th Cir. 2015)

(8 months is too long); *Miller-Goodwin v. City of Panama City Bch.*, 385 F. App'x 966,

974 (11th Cir. 2010) (same); *Grier v. Snow*, 206 F. App'x 866, 869 (11th Cir. 2006)

(same). If Torres' claim is that she was rejected for an Asset Manager position and

received a negative employee review in October 2020, those claims would fail for

similar reasons. Both of these events took place **years** after Torres made a sexual

harassment complaint. (Torres at 51:21-25; 52:1-3). Importantly, Torres herself

acknowledged that prior to 2020, she exceeded expectations in her capacity as a GIS

Analyst and received additional responsibilities as a result. (*Id.* at 171:12-14; 115:24-

25; 116:1-2). Likewise, Torres recounted that her former supervisor, Rogers,

struggled with her decision to pick Dr. Walton as Asset Manager as both Torres and

Walton were qualified candidates. (*Id.* at 140:4-13). There is no support for Torres'

claims that the County suddenly began retaliating against her for filing a sexual

harassment years after the complaint was made and interim positive evaluations.

> **2.      *The County Had Legitimate, Non-Retaliatory Reasons for Its
> Employment Decisions, and Torres Cannot Establish the Reasons
> Were False or the Real Reason Was Retaliation.***

If Torres establishes a *prima facie* case of retaliation (which she cannot), the

County must offer legitimate, non-retaliatory reasons for its employment decisions.

*Castillo v. Roche Labs., Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012). Once the County

does so, Torres must produce evidence that the County's reasons are a pretext for

retaliation. *Id.* The ultimate burden of proving retaliation remains on Torres, "who

must meet the employer's proffered reason head on and rebut it." *Id.* Torres "must produce significant probative evidence of pretext." *Id.* "Conclusory allegations of . . . retaliation, without more, are insufficient." *Id.* Torres fails to meet this burden.

Torres may have disagreed with Rogers' decision to hire Dr. Walton for the Asset Manager position; however, Rogers' belief that Dr. Walton was better qualified for the position is a legitimate, non-discriminatory reason for not selecting Torres. *See, e.g., Monds v. Quitman Georgia*, 767 F. App'x 750, 752 (11th Cir. 2019) (selection of better qualified candidate is legitimate, non-discriminatory reason); *Tippie v. Spacelabs Med., Inc.*, 180 F. App'x 51, 55 (11th Cir. 2006) (same).

Likewise, while Torres may not have considered her negative interactions with her colleagues to have impacted her performance; Cullen and Rogers disagreed. (Hitzemann Dec. Exs. A-B).  Rogers repeatedly expressed to Hitzemann her frustration with Torres and ultimately resigned her position with Pasco County in large part because of that frustration.  (Hitzemann at 22:17-23:7, Hitzemann Dec. at ¶ 33).). Accordingly, Pasco County's concerns regarding Torres' job performance constitute legitimate, non-retaliatory reasons for its employment actions, which Torres cannot show are pretextual. *See, e.g.*, *Dudley v. City of Monroeville*, 446 F. App'x 204, 206 (11th Cir. 2011) (poor job performance is a legitimate, non-retaliatory reason for adverse employment action). At best, Torres does little more than argue with Pasco County's legitimate basis for its employment actions.  However, Torres' disagreement with Pasco County's reasons is irrelevant.  *See Webb v. IBM*, 458 F.

App'x 871, 876 (11th Cir. 2012) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.' Provided that the proffered reason 'is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.'")  Torres cannot establish pretext, and thus her claims of discrimination and/or retaliation fail as a matter of law.

While the Court must "liberally construe[ ]" documents filed by Torres, holding her "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), even a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998) (holding that "once a *pro se* [ ] litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record. *E.g., Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under **summary judgment standards** of establishing that there is a genuine issue as to a fact material to his case in order to avert **summary judgment**.").

As set forth herein, there is no genuine issue of material fact and Defendant is entitled to summary judgment in its favor.

WHEREFORE, Pasco County Board of County Commissioners, requests this honorable Court grant its Motion for Summary Judgment, grant Pasco County Board of County Commissioners' fees, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**FORDHARRISON LLP**

By:*/s/ Daniel K. Miles*
Tracey K. Jaensch, B.C.S
Florida Bar No. 907057
tjaensch@fordharrison.com

Daniel K. Miles
Florida Bar No. 119930
dmiles@fordharrison.com

101 East Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800

Attorneys for Defendant,
Pasco County Board of County
Commissioners

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Jerri Torres, *pro se*
Accusatoris_Officium@protonmail.com

*/s/ Daniel K. Miles*
Attorneys

WSACTIVELLP:13306823.1

DRAFT