**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JERRI "MEGAN" TORRES,

      Plaintiff,

v.                                                                            Case No: 8:21-cv-892-TPB-JSS

PASCO COUNTY, FLORIDA,

      Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on cross motions for summary judgment. "Defendant's Motion for Summary Judgment and Supporting Memorandum of Law," was filed on August 8, 2022. (Doc. 139). Plaintiff filed a response in opposition on August 26, 2022. (Docs. 147; 148). Defendant did not file a reply. Plaintiff filed a motion for summary judgment on August 8, 2022 (Doc. 141), but later filed a motion to amend to conform with formatting and page limitation requirements. (Doc. 142). The Court granted leave, and on August 23, 2022, Plaintiff filed her amended motion for summary judgment. (Doc. 145; 146; 147). On September 21, 2022, Defendant filed a response in opposition. (Doc. 157). On October 2, 2022, Plaintiff filed a reply. (Docs. 159; 160). Upon review of the motions, responses, reply, court file, and record, the Court finds as follows:

## Background

Plaintiff Jerri "Megan" Torres was employed by the Pasco County Board of Commissioners as an employee of the Pasco County Utilities ("PCU" or "Utility Department") from around May 2016 until October 2020 as a geographic information systems ("GIS") analyst.[1]  As a GIS analyst, Plaintiff was responsible for creating maps of Pasco County's water pipeline infrastructure for Pasco County Utility's engineering department.

In this lawsuit, Plaintiff asserts that she was "discriminated and retaliated against" after complaining to human resources about perceived sexual harassment. The alleged harassment consisted of what Plaintiff referred to as "cat calls" by another Utility Department employee.  On June 14, 2017, Plaintiff complained to human resources director Barbara Hitzemann that an unidentified employee had harassed her by attempting to engage Plaintiff in conversation when she saw him on three occasions:

> In April 2017, as Plaintiff was exiting the building carrying survey equipment, the unidentified employee asked Plaintiff why she was carrying a rifle (in a "suggestive tone," according to Plaintiff).
>
> The next day, while exiting the same building, the unidentified employee asked her where her rifle was that day.
>
> On June 13, 2017, as Plaintiff was walking through the lobby, the unidentified employee said "Hey, give us a smile."

---

[1] The Court notes that although Plaintiff asserts in her complaint that she was initially employed beginning in October 2016, she clarified in her deposition that her employment actually began in May 2016.  (Doc. 140-1 at 31:1-25; 32:1-2).

When Plaintiff reported the perceived harassment, Hitzemann began an investigation and discovered the name of the employee.  Hitzemann did not believe that benign attempts to engage Plaintiff in conversation constituted sexual, suggestive, or offensive comments, but Hitzemann nonetheless advised this employee not to engage Plaintiff in conversation moving forward or he would be subject to disciplinary action. Hitzemann also instructed Plaintiff to inform her if the employee violated this instruction.  Plaintiff had no further interactions with the employee and never saw him again.

Plaintiff asserts that in 2017, she took over some managerial duties and was "coerced" to do more work than she was hired to do without proper adjustments to salary or other promotional opportunities.  Plaintiff also asserts that she was actually passed over for specific promotions, including a promotion into an asset manager position in 2019, due to sex discrimination and/or retaliation following her sexual harassment complaint, and that the "harassing, retaliatory, [and] discriminatory conduct was sufficiently severe and pervasive so as to unreasonably damage and deteriorate Plaintiff's physical health, work performance and so as to create an intimidating, hostile and offensive working environment."

After Plaintiff was passed over for the asset manager position, Defendant began to receive complaints about Plaintiff from her coworkers and other County employees.  These complaints focused on Plaintiff's difficulty in working with others.[2]  On January 13, 2020, Defendant provided an interoffice memorandum

---

[2] The Court notes that Plaintiff contests this point, arguing that she did not have difficulty working with others.

outlining behavioral issues and warning of possible disciplinary action if she did not improve, including termination of employment.  In her 2020 employee evaluation, it was noted that although Plaintiff demonstrated strong technical capabilities, she failed to embrace a culture of teamwork and had poor working relationships with her team despite coaching.

Following the 2020 evaluation, Plaintiff requested a meeting to discuss the behavioral problems referenced in the evaluation, as well as her ongoing conflicts with her coworkers.  Plaintiff then informed Defendant that she had secretly recorded interactions between herself and her colleagues to show that she did not have conflicts with them.  Considering the ongoing behavioral issues, and the fact that Plaintiff was now recording conversations with her coworkers without their permission, Hitzemann presented Plaintiff with two options: (1) to attend a pre-disciplinary hearing to address the actions of secretly recording her colleagues and explain why she should not be terminated, or (2) to resign her employment. Plaintiff ultimately chose to resign on October 26, 2020.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 4, 2021, alleging violations of Title VII based on sex discrimination, retaliation, religious bias, and sexual harassment.

On April 14, 2021, Plaintiff filed a lawsuit against the County and numerous officials asserting that she was discriminated against based on her gender/sex, religion, and the disability of her minor child.  (Doc. 1).  She specifically included claims for constructive fraud or fraud (Count 1), duress or coercion (Count 2), civil

rights conspiracy (Count 3), "discrimination" (Count 4), unlawful employment practices (Count 5), conspiracy to commit fraud (Count 6), "harassment and/or trespass" (Count 7), "deprivation of rights" (Count 8), "violation of the declaration on the rights and duties of man" (Count 9), "targeting" (Count 10), constructive dismissal (Count 11), religious bias, persecution, or discrimination (Count 12), unequal employment opportunity (Count 13), violation of the Equal Pay Act (Count 14), violation of the Lilly Ledbetter Fair Pay Act (Count 15), violation of Florida Civil Human Rights Act (Count 16), and violations of Florida Statutes (Counts 17 and 18). Plaintiff sought $21 million dollars in damages, along with requesting criminal charges against the named defendants.

On May 26, 2021, Plaintiff filed an amended complaint (Doc. 35) against the County consisting of claims for duress/coercion (Count 1), sexual harassment discrimination (Count 2), unlawful employment practices (Count 3), harassment and/or trespass (Count 4), "targeting" (Count 5), constructive dismissal (Count 6), religious bias, persecution, or discrimination (Count 7), unequal employment opportunity (Count 8), and violation of the Equal Pay Act (Count 9), and she again sought $21 million in damages. The Court dismissed the amended complaint due to numerous deficiencies, but it granted leave to amend. (Doc. 60).

On August 25, 2021, Plaintiff filed her second amended complaint against the County. (Doc. 62). In this operative complaint, she asserts claims for sexual harassment and discrimination (Count 1), hostile working environment (Count 2), and pay discrimination (Count 3).

<u>Analysis</u>

In this case, Plaintiff has brought claims for discrimination, retaliation, and hostile work environment. Although these claims are brought under different statutory schemes, the analysis of each claim involves similar legal frameworks and tests. *See Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 130 (11th Cir. 2019); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389–90 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under [FCRA].").

***Count 1: Sexual Harassment and Sexual Discrimination Claims***

<u>Sexual Harassment Claim</u>

In Count 1, Plaintiff primarily asserts a Title VII sexual harassment claim based on "cat calls" from another Utility Department employee that occurred in 2017. As a prerequisite to bringing claims under Title VII, a plaintiff must timely file a charge of discrimination. *See* 42 U.S.C. § 2000e-5. In a deferral state such as Florida, a charge must be filed within 300 days of the last discriminatory act (365 days under the FCRA). *Pedrioli v. Barry Univ., Inc.*, No. 6:17-cv-00577-Orl-40GJK, 2018 WL 538743, at *2 (M.D. Fla. Jan. 24, 2018) (internal citations omitted). The "cat calls" allegedly occurred in 2017, but Plaintiff did not file her EEOC charge until February 4, 2021. Therefore, it appears on the face of the record that Plaintiff's sexual harassment claim is untimely because she did not file an EEOC charge within the requisite period of time.

However, even if the Court were to agree with Plaintiff that the EEOC charge was timely filed, Defendant would still be entitled to summary judgment on the

merits.  Plaintiff asserts a hostile work environment claim based on sexual harassment.  To establish sexual harassment, a plaintiff must demonstrate: "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on [her sex] …; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Id.*  "In assessing whether harassment is objectively severe and pervasive, courts typically look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1983).

In this case, Plaintiff claims that she was subject to unwelcome sexual harassment through "cat calls."  However, Plaintiff offers no evidence that suggests the employee's remarks implicated her gender in any way. *See Byrd v. Postmaster Gen.*, 582 F. App'x 787, 792 (11th Cir. 2014); *Mitcham v. Univ. of S. Fla. Bd. Of Trs.*,

71 F. Supp. 3d 1306, 1317 (M.D. Fla. 2014).  In fact, reviewing the comments made by the employee, it is clear that Plaintiff's gender is not implicated whatsoever.  The term "cat call" suggests an inappropriate sexual and gender-based type of comment. Plaintiff has chosen to label the statements at issue here as "cat calls," but her decision to use that label does not mean the statements were actually sexual or gender-based.  In fact, the three instances of "cat calls" identified by Plaintiff are not sexual in nature and do not support a sexual harassment claim.  *See, e.g.*, *Cramer v. Bojangles' Restaurants, Inc.*, No. 2:10-CV-0159-RWS-SSC, 2012 WL 716176, at *4 n.5 (N.D. Ga. Feb. 8, 2012).  Plaintiff takes offense here simply because a male employee made statements to her that were not related to work. Under Plaintiff's view of the world, any statement unrelated to work made to another employee of a different gender would constitute unwelcome sexual harassment.  No reasonable person (or jury) could find the conduct identified by Plaintiff here to be sexual, related in any way to gender, or sufficiently hostile or abusive to support an employment discrimination claim.

In addition, although Plaintiff generally alleges that the conduct involving catcalls was "severe and pervasive," the facts demonstrate that she only received three "cat calls" during a brief window of time.  This does not rise to the level of severity necessary to support a hostile work environment claim.  *See Byrd*, 582 F. App'x at 792-93 (conduct occurring over six months at unspecified frequency not severe or pervasive so as to alter the conditions of employment).

Finally, the evidence shows that when Plaintiff reported these "cat calls" to human resources, even though Defendant did not believe these comments to constitute sexual harassment, Defendant took immediate and appropriate corrective action in response to her complaint.  Defendant investigated and discovered the identity of the male employee and directed him not to speak to Plaintiff again.  And the employee did not speak to Plaintiff again in compliance with this directive.  Although Plaintiff may wish that Defendant would have punished this employee in more severe ways, such as suspension or termination, she has not presented any evidence of significant shortcomings in Defendant's response to her complaint and has not presented any basis for liability here.[3]  *See, e.g.*, *Goodstein v. Gunther Motor Co.*, No. 95-6678-CIV-UNGARO-BENAGES, 1996 WL 903950, at *9-12  (S.D. Fla. Sept. 12, 1996), *aff'd* 135 F.3d 144 (11th Cir. 1998).

<u>Sexual Discrimination and Retaliation Claims</u>

Plaintiff did not separate discrete claims of discrimination into separate counts in violation of Rules 8 and 10 and is generally not permitted to maintain these claims at the summary judgment stage of the proceedings.  *See Palmer v.*

---

[3] The Court notes that "[p]rior complaints about [an] alleged harasser, where those prior complaints are sufficiently severe similar, and near in time to the present complaint, may be admissible to put an employer on notice of a hostile work environment." *Goodstein v. Gunther Motor Co.*, No. 95-6678-CIV-UNGARO-BENAGES, 1996 WL 903950, at *9. Plaintiff has failed to present evidence about any prior complaints that are sufficiently severe, similar, or near in time to her complaint to demonstrate an issue of fact as to whether Defendant had knowledge of harassment.  In fact, the deposition that Plaintiff relies upon in support of her argument that Defendant should have been on notice of harassment reflects that the alleged harasser received one other complaint in his 33 years with Pasco County, and it appears that complaint occurred in 2018 -- *after* the incident with Plaintiff, and it involved an isolated comment made to another employee that was significantly more sexual in nature than any of the comments made to Plaintiff.

*Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011).  However, due to Plaintiff's *pro se* status, in an abundance of caution, the Court will further address possible sex discrimination and retaliation claims.[4]

### *Sex Discrimination Claim*

#### Plaintiff's *Prima Facie* Claim

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's […] sex."  42 U.S.C. § 2000e-2(a)(1).  It should be noted that Plaintiff does not point to direct evidence of unlawful discrimination.  However, "[w]hen direct evidence of unlawful discrimination is lacking, Title VII plaintiffs may instead turn to the burden-shifting framework" set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  *Flowers v. Troup Cty., Ga. Sch. Dist.*, 803 F.3d 1327, 1335 (11th Cir. 2015).

Under the *McDonnell Douglas* framework, the plaintiff must make out a prima facie case for sex discrimination by showing: (1) she belongs to a protected

---

[4] The Court will not address any religious discrimination and disability discrimination claims that Plaintiff now attempts to raise in her summary judgment motion or in response to Defendant's summary judgment motion.  These claims were not pled in the operative complaint and are not properly before the Court; they cannot be raised at this stage of the proceedings.  However, even if it were appropriate to address these claims now, the claims would be denied on the merits.  Plaintiff fails to sufficiently allege or establish her religion or disability, that she was qualified to perform her job, that Defendant treated similarly-situated employees outside of the class more favorably, that her religion or disability played any part in adverse employment actions, or that Defendant knew of her religion or disability.  She also does not allege or establish that any employment action (or lack of action) was taken because of a discriminatory motive.

class; (2) she was subjected to an adverse employment action; (3) she was qualified to perform the job; and (4) her employer treated "similarly situated" employees outside her class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019). Establishing a prima facie case creates an initial presumption of discrimination. *Flowers*, 803 F.3d at 1336. The burden then shifts to the defendant to "articulate legitimate, nondiscriminatory reasons for its actions." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 405 U.S. at 253). "Once the employer advances its legitimate, nondiscriminatory reason, the plaintiff's prima facie case is rebutted and all presumptions drop from the case." *Flowers*, 803 F.3d at 1336 (citing *Burdine*, 450 U.S. at 255). The burden then shifts back to the plaintiff to demonstrate that the defendant's reasons were a pretext for discrimination. *Lewis*, 918 F.3d at 1221.

Here, Plaintiff does not establish a prima facie case for sex discrimination. Plaintiff appears to allege that she belongs to a protected class as a female. However, Plaintiff does not sufficiently identify as part of this claim any materially adverse employment actions taken against her. She alleges generally that after she met with Defendant, she was subject to "harassment," "bullying," and "unfair and unreasonable demands." But these are not "adverse employment actions" that can support a discrimination claim.

Perhaps more importantly, Plaintiff does not put forth any facts to demonstrate that Defendant treated similarly-situated employees outside of her class (here, men) more favorably, or that Plaintiff's gender played any part in

adverse employment actions.  For example, to the extent that Plaintiff claims the failure to promote in 2019 constituted an adverse employment action, she cannot maintain a sex discrimination claim because a female applicant was selected for the asset manager role, and Plaintiff was not rejected for the position in favor of a male candidate.  *See, e.g.*, *Martin v. City of Atlanta, Ga.*, 579 F. App'x 819, 825 (11th Cir. 2014).  Although Plaintiff believes that she was mistreated and undervalued as an employee, she has not established a prima facie case that she was discriminated against because of her sex.

### Nondiscriminatory Reasons

Even if Plaintiff could establish a prima facie case for discrimination, Defendant would be entitled to summary judgment if it can show a nondiscriminatory reason for its actions.  The Eleventh Circuit has held that a defendant's burden to provide nondiscriminatory reasons for its actions is "a low bar to hurdle."  *Flowers*, 803 F.3d at 1336 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (internal quotations omitted).  The defendant "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Vargas v. Michaels Stores, Inc.*, Case. No. 8:16-cv-1949-T-33JSS, 2017 WL 2931379, at *14 (M.D. Fla. June 10, 2017) (quoting *Weston-Brown v. Bank of Am. Corp.*, 167 F. App'x 76, 80 (11th Cir. 2006)).  "[A]ll that matters is that the employer advance an explanation for its action that is not discriminatory in nature."  *Jolibois v. Fla. Int'l Univ. Bd. of Tr.*, 654 F. App'x 461,

463 (11th Cir. 2016) (quoting *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999)) (internal quotations omitted).

Liberally construing the pleadings in light of Plaintiff's *pro se* status, she arguably suffered adverse employment actions, including:  (1) the failure to promote to the asset manager position in 2017, (2) a "reprimand," and (3) constructive discharge when Plaintiff was asked to resign.[5]  With regard to the failure to promote to the asset manager position in 2019, her claim fails because Defendant has presented a nondiscriminatory reason for its actions –it hired a female candidate that it viewed as more qualified.  With regard to the other possibly adverse employment actions, Defendant cites two reasons for the "reprimand" and the resignation request: Defendant asserts that (1) Plaintiff had issues getting along with her supervisors and her coworkers and (2) began to secretly record conversations with her supervisors and coworkers.  By producing these nondiscriminatory reasons for its actions, Defendant has met its burden of production, and the burden shifts back to Plaintiff to show that Defendant's proffered reasons are pretextual.

<u>Pretext</u>

The Eleventh Circuit recently observed that "[a] reason is pretextual only if it is false and the true reason for the decision is discrimination."  *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, No. 19-12094, 2020 WL 709620, at *6 (11th

---

[5] The only specifically identified "reprimand" is Plaintiff's 2020 employee evaluation. The Eleventh Circuit has declined to address whether a reprimand alone constitutes an adverse employment action.  *See Brathwaite v. Sch. Bd. of Broward Cty., Fla.*, 763 F. App'x 856, 861 (11th Cir. 2019).

Cir. Feb. 12, 2020); *Langford v. Magnolia Adv. Mat., Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Evidence of pretext must be enough to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, No. 19-11432, 2020 WL 914923, at *3 (11th Cir. Feb. 26, 2020) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). The evidence must, therefore, be sufficient to render the employer's nondiscriminatory explanations for its actions "unworthy of credence." *Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804–05). As such, pretext cannot be established through conclusory allegations of discrimination, the plaintiff's subjective belief she was discriminated against, or by merely questioning the wisdom of the employer's decision. *Perry v. Walmart Inc.*, Case No. 2:18-cv-606-FtM-29NPM, 2020 WL 1158719, at *8 (M.D. Fla. Mar. 10, 2020) (explaining that a plaintiff's "subjective belief that she was discriminated against [is] insufficient to demonstrate pretext"); *Monds v. Quitman Ga.*, 767 F. App'x 750, 756 (11th Cir. 2019) (explaining that a mayor's belief that race factored into hiring decisions was not enough for a reasonable jury to infer pretext and discrimination where "he did not testify to a single event, statement, or occurrence that informed his conclusion"); *Thomas v. Seminole Elec. Coop., Inc.*, 385 F. Supp. 3d 1246, 1257 (M.D. Fla. 2018); *Jolibois*, 654 F. App'x at 464.

Instead, the plaintiff must provide sufficient evidence to show "both that the reason was false, and that discrimination was the real reason." *Bruno v. Greene Cty. Sch.*, No. 19-10616, 2020 WL 524723, at *3 (11th Cir. Feb. 3, 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). To do so, the plaintiff "must meet the [employer's] reason head on and rebut it." *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Where the defendant provides multiple nondiscriminatory reasons for its actions, the plaintiff must rebut each reason as pretextual. *Hicks-Washington*, 2020 WL 709620, at *6.

Plaintiff fails to show that Defendant's nondiscriminatory reasons are pretextual. Plaintiff's pretext argument represents merely *her* subjective opinion that she was a good employee and got along with at least some of her coworkers. She fails to address her relationships with other coworkers, including other women who complained about her, and with management. She has not offered evidence from which a jury could conclude that Defendant did not honestly believe her overall job performance was unsatisfactory based on its attitude-related concerns. *See Jackson v. Agency for Persons with Disabilities Fla.*, 608 F. App'x 740, 742 (11th Cir. 2015). Plaintiff also admits that she recorded conversations and meetings, although she believes she was not doing anything illegal when doing so.[6] Plaintiff

---

[6] Regardless of whether it was a criminal offense (or not) for Plaintiff to secretly record conversations with her coworkers, it is certainly reasonable for an employer to oppose such activities. As such, Plaintiff's conduct in secretly recording conversations among her coworkers may provide a nondiscriminatory basis for Defendant's actions. Plaintiff has not shown that this reason was pretextual.

has failed to rebut, as required, *all* the nondiscriminatory reasons Defendant has offered.

In sum, even if Plaintiff could establish a prima facie case for discrimination, Defendant is entitled to summary judgment on Plaintiff's possible sex discrimination claim in Count 1 because Defendant has produced nondiscriminatory reasons for its actions, and Plaintiff has not provided sufficient evidence to establish that these reasons were pretextual.

*Retaliation Claim*

To the extent that Plaintiff claims that she was retaliated against because of her sexual harassment complaint, she also cannot establish a claim. Retaliation claims are reviewed under the same *McDonnell Douglas* burden-shifting framework discussed above. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Ceus v. City of Tampa*, No. 18-10484, 2020 WL 525559, at *6 (11th Cir. Feb. 3, 2020). The only difference in the analyses is that the prima facie case for retaliation requires the plaintiff to establish: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was some causal connection between the two events. *Johnson*, 948 F.3d at 1325.

Plaintiff arguably engaged in statutorily protected activity when she reported perceived sexual harassment in 2017. Plaintiff arguably suffered adverse employment actions when she was: (1) denied promotions, including to an asset manager position, (2) reprimanded; and (3) constructively discharged. Plaintiff's retaliation claim, however, cannot survive summary judgment because even if she

engaged in statutorily protected activities and suffered adverse employment actions, she has failed to establish any causal connection between those events.

To prove causation, a plaintiff must be able to show "but-for" causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  The Eleventh Circuit has held that when a plaintiff relies on mere temporal proximity to establish causation, the proximity must be "very close."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see, e.g.*, *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229-30 (11th Cir. 2011) (holding that a two-month gap is not "very close").  In this case, Plaintiff has presented no substantive evidence of causation beyond the fact that the catcalling incidents chronologically occurred before the other incidents complained of.  Plaintiff asserts that she reported sexual harassment in 2017, and that she was subsequently subjected to adverse employment actions, including the denials of promotions and false disciplinary reviews in 2019 and 2020.  However, these events are not close in time, and Plaintiff therefore cannot establish the requisite causation.

Furthermore, the Court notes that even if Plaintiff could establish a prima facie case for retaliation, the Court's prior analysis concerning her failure to establish pretext would likely still eliminate her claim as a matter of law.

## Count 2: Hostile Working Environment

To state a hostile work environment claim under Title VII and FCRA, a plaintiff must establish that:  (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her

membership in a protected group; (4) the harassment was sufficiently severe and pervasive to alter the terms of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of direct or vicarious liability. *Jones v. Spherion Atlantic Enterp., LLC*, 493 F. App'x 6, 9 (11th Cir. 2012). Here, Plaintiff cannot establish a prima facie case for her hostile work environment claim because she has presented no evidence to show that the alleged harassment she faced – in Count 2, due to allegedly defamatory statements about her job performance – was based on her membership in a protected group.

"Title VII is not a civility code." *Trask v. Sec., Dep't of Vet. Aff.*, 822 F.3d 1179, 1195 (11th Cir. 2016) (internal quotation omitted), *abrogated on other grounds by Babb v. Wilkie*, 140 S. Ct. 1168 (2020). Rather, Title VII prohibits harassing behavior only when it "discriminates based on a protected category." *Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 546 (11th Cir. 2010) (quoting *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007)); *Whitehurst v. Liquid Envtl. Sols., Inc.*, 45 F. Supp. 3d 1328, 1343 (M.D. Fla. 2014) ("The touchstone of a hostile work environment claim is the presence of … harassment based on a protected characteristic."). "[O]nly conduct that is 'based on' a protected category […] may be considered in a hostile work environment analysis." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (finding that leaving bananas on a black man's truck was sufficiently based on race). A failure to show that the harassment is based on the employee's protected

status is "fatal" to a plaintiff's claim.  *See Trask*, 822 F.3d at 1196; *Belton v. U.S. Dep't of Agric.*, Case No. 6:17-cv-989-Orl-40TBS, 2019 WL 1130008, at *6 (M.D. Fla. Mar. 12, 2009) (explaining that a plaintiff's conflicts and confrontations with her employer "add no support to her hostile work environment claim" where they are "not based on a protected category").

Plaintiff has presented no evidence that the problems that may have existed in her workplace were in any way related to her gender.  The allegedly defamatory statements concerning Plaintiff's job performance were made by two female colleagues and focused exclusively on Plaintiff's behavior at work, particularly her inability to get along with her supervisors and coworkers.  The statements (and 2020 evaluation) do not implicate Plaintiff's gender in any way whatsoever and thus cannot be used as a basis for a hostile work environment claim.  *See Mitcham*, 71 F. Supp. 3d at 1317.  In addition, Plaintiff has presented no evidence to demonstrate that the alleged harassment was severe or pervasive, or that there is any basis for Defendant's liability.  Faced with this absence of evidence, the Court finds that Defendant is entitled to summary judgment on Count 2.

### Count 3: Discrimination in Pay and Unequal Employment Opportunity

Defendant argues that it is entitled to summary judgment on Count 3 because Plaintiff cannot establish any claim for relief under the Equal Pay Act of 1963 ("EPA").  "To establish a prima facie case under the EPA, an employee must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and

responsibility, and which are performed under similar working conditions."
*Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998) (internal quotations
omitted).

In this case, Plaintiff has identified GIS Supervisor Jeremy Edwards as her
only alleged comparator. However, Plaintiff has completely failed to demonstrate
that she performed work that was substantially equivalent to the work of Edwards.
Plaintiff and Edwards were both engaged in GIS work, but that is where the
similarities end. They worked in separate departments with different teams.
Plaintiff worked only for Pasco County Utilities and her GIS work was limited to
the County's water pipelines. Edwards supervised GIS analysts in Pasco County,
including hiring, disciplining, firing, and directing the work of more than five
subordinates. Plaintiff supervised no one. To put it simply, Edwards and Plaintiff
did not perform equal work, and therefore, she is not entitled to equal pay.
Defendant's motion is granted as to Count 3.

## Conclusion

The evidence presented here clearly establishes that Defendant, Pasco
County, did not act unlawfully in its employment relationship with Plaintiff.
Plaintiff has failed to present a prima facie case for sexual harassment, sex
discrimination or retaliation, hostile working environment, or unequal pay. Even if
she could or did present a prima facie case, Defendant has presented valid,
nondiscriminatory reasons for its actions, and Plaintiff has failed to rebut those

reasons as pretextual.  As such, Defendant is entitled to summary judgment on all counts of the second amended complaint.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant's Motion for Summary Judgment and Supporting Memorandum of Law" (Doc. 134) is hereby **GRANTED**.

2. Plaintiff's "Amended Motion-For-Summary-Judgment" (Doc. 145) is **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Pasco County, Florida, and against Plaintiff Jerri "Megan" Torres, on all counts of the second amended complaint.

4. The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of October, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**